HONDA MOTOR COMPANY, LTD., Petitioner,

v.

Michael SALZMAN and Ed J. Corporation, d/b/a Renton Kawasaki, Respondents.

No. S–2093.

Supreme Court of Alaska.

March 11, 1988.

---

Kent L. Richland, Greines, Martin, Stein & Richland, Los Angeles, Cal., and Paul A. Barrett, Call, Barrett & Burbank, Fairbanks, and Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Anchorage, for petitioner.

James A. Parrish, Parrish Law Office, Fairbanks, and Theodore R. Dunn, Goetz, Madden & Dunn, Bozeman, Mont., for respondent Salzman.

Howard Staley, Staley, DeLisio, Cook & Sherry, Fairbanks, for respondent Ed J. Corp.

Before RABINOWITZ, BURKE and COMPTON, JJ.

## OPINION

BURKE, Justice.

This petition for review arises from a products liability action filed by Michael Salzman against Honda Motor Company, Ltd. (Honda) and others[1] for injuries he sustained when the 1983 Honda 200E ATC he was driving malfunctioned on June 28, 1983, causing him to fall off. After a strained and unproductive period of discovery spanning sixteen months, superior court judge Mary Greene entered an order imposing liability on Honda as a sanction for Honda's willful noncompliance with discovery rules and court orders compelling discovery.

Honda petitioned for review of Judge Greene's order, claiming that the trial court abused its discretion in imposing liability as a sanction. We conclude that the trial court acted wholly within its discretionary powers, and, therefore, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In late 1985, Salzman served several discovery requests on Honda, seeking, among other things, documents and records relating to the assembly and testing of ATC's and engineering reports related to the wheel assembly. At Honda's request, Salzman granted Honda an extension of time in which to produce its responses; he gave the company until February 5, 1986, over eighty days from the time of the first request.

The due date passed with neither response nor objection from Honda, and Salzman moved for a court order compelling responses to his requests. Honda opposed the motion, assuring the court that answers were forthcoming, and explaining that the language barrier and communications among "coordinating counsel" in Los Angeles, St. Louis, and Japan made this a "very time-consuming process." On March 17, 1986, Judge Greene issued an order compelling discovery and setting forth specific due dates for each of the requests for production to which Honda had failed to respond.[2]

---

1. Honda is the manufacturer of the vehicle involved; Salzman also named American Honda Motor Company, Inc. (the distributor), KGM Assemblers, Inc. (the assembler), and Ed J. Corporation (the Honda dealer who sold Salzman the vehicle) as defendants. On this petition, Ed J. Corporation joins Salzman as a respondent; KGM Assemblers joined in Salzman's opposition to Honda's petition for review, but did not file a brief after the petition was granted. The other parties are not involved.

2. Pursuant to this order, Honda provided some answers. However, none of the requested documents from Japan were produced, and those answers which were provided were served nine days after Judge Greene's established deadline.

Salzman's next discovery request, dated February 28, 1986, sought information relating to developmental testing of the hub and wheel assembly of the 1983 200E ATC, among other things. When Honda objected to this information on the ground that, among other things, it involved trade secrets, Salzman again filed a motion to compel. On May 5, 1986, Judge Greene issued an order compelling production of the requested material and granting a temporary trade secret protective order for Honda. Despite the fact that this order protected Honda's confidentiality, Honda still did not produce any Japanese documents.

At the June 4, 1986 hearing on Honda's protective order, the superior court entered a comprehensive confidentiality order. However, noting Honda's continued noncompliance with previous discovery orders,[3] the court refused to grant a complete protective order. Instead, the court ordered Honda to produce, within thirty days, the documents relevant to the prior orders to compel which Honda said it was willing to supply, and to provide a categorized list of each document it had that was responsive to those requests it claimed were burdensome.

Honda again failed to comply with the court's order. It finally filed this list of documents thirty-one days late, on July 16, 1986, explaining that the delay was due to a miscommunication among counsel. Similarly, Honda was late in filing the translated documents Judge Greene had ordered produced at the June 4 hearing. They were finally delivered on July 17, 1986, four months after the court first ordered their production and two weeks after the outside date set by the court at the June 4 hearing.

Salzman, contending that the list provided was incomplete and that the documents produced were inadequate, moved for sanctions against Honda on August 14, 1986. At the hearing on this motion,[4] the parties discussed the tortuous history of discovery in this case, and Judge Greene again admonished Honda for its lack of response to the discovery orders. Counsel for Honda admitted that "we're late. We're terribly late," but stated that he believed that all the requested documents had been produced at that time.[5] He also said, "I can promise you at this point [that] it won't happen again. It will not happen again."

On September 25, 1986, Judge Greene issued her memorandum decision and order striking Honda's comparative negligence and negligence *per se* defenses "as a sanction for their willful noncompliance with discovery orders." In this order, Judge Greene included yet another warning to Honda, stating that "[s]hould Honda persist in its pattern of noncompliance after this order, the court will not hesitate to declare liability against Honda."

The saga continued. Honda failed to produce its witness list on time, and Salzman filed a second motion for sanctions. At the November 4, 1986 hearing on this issue, Judge Greene ruled in Honda's favor, stating that because there had been an attempt to remove the case to federal

---

**3.** At this hearing, Judge Greene remarked:
   I cannot believe Honda's behavior in this case. I have never seen a party who has been so willing to violate court orders, never in my entire career.... The ... problem that I have is that [Honda has] not been trying to comply. There are documents that are clearly discoverable, that are clearly under the terms of what I ordered months ago to be disclosed that have not even reached translation. That troubles me. I do not want to reward Honda for being unduly dilatory.
She also explicitly warned Honda that "[i]f it is clear that Honda has not disclosed information that is clearly relevant, I'll take appropriate action at that time."

**4.** Three days before this hearing, on September 19, 1986, Honda served several additional answers to interrogatories and documents responding to the requests for production. Still, there was nothing produced concerning design testing of the ATC wheel assembly.

**5.** Judge Greene, apparently unconvinced by these representations, asked "[w]hy should I trust Honda now?" and further stated that she had "real doubts" that all documents had been produced. In fact, on September 23, 1986, one day after this first sanction hearing, Honda advised Salzman that it "was informed this morning that certain developmental documentation" not theretofore produced actually did exist, and would be produced, thus substantiating Judge Greene's doubts.

court, Honda's contention that the pretrial order had been suspended was "at least arguable." [6] Thus, no sanctions were imposed, although Judge Greene again warned Honda about its document production, saying "I still don't trust Honda's representations that everything's been supplied. There are too many holes here. I just don't believe it.... [Y]ou better be sure you're right."

Salzman's third and final motion for sanctions was filed one month after this hearing. Salzman had deposed two of Honda's Japanese witnesses, and had ascertained that many documents which had been the subject of discovery requests did in fact exist and had been withheld. His motion also recounted the ongoing difficulties there had been at each stage of the discovery process, and asserted that Honda's recalcitrance was inexcusable and willful. After a hearing on this third and final motion for sanctions, Judge Green issued her memorandum decision and order. The order noted that Honda had continually "demonstrated its inability or unwillingness to comply with rules governing discovery and this court's orders compelling discovery," and concluded that Honda had willfully withheld documents which should have been produced earlier. Based on this willful noncompliance, she ordered that liability be declared against Honda as a sanction. It is this order which Honda asks us to review.

## DID THE TRIAL COURT ABUSE ITS DISCRETION? [7]

Honda contends that the record as a whole does not support the conclusion that it willfully withheld discovery, and that the trial court therefore abused its discretion. Specifically, Honda argues that (1) as a foreign, non-English speaking defendant, it was at a "considerable disadvantage," and the delays here were not attributable to willfulness, but to these "linguistic and geographic handicaps," (2) the discovery requests were overbroad, (3) Honda did in fact make "extraordinary efforts to comply with discovery requests and to cooperate," (4) the trial court mistakenly found that some documents were never produced which, in fact, *were* produced, and (5) Honda reasonably believed that certain unproduced documents were not within the scope of Salzman's discovery requests. In addition, Honda argues that it was denied due process because the trial court placed the burden of proving lack of willfulness on it.

◼ We have explicitly held that, where discoverable documents are withheld, it is proper to place the burden of showing that noncompliance was not willful on the party from whom discovery is sought. *Hawes Firearms Co. v. Edwards*, 634 P.2d 377, 378 n. 2 (Alaska 1981). The reasons for noncompliance are facts peculiarly within Honda's knowledge. Honda has not persuaded us that this rule should be overturned.

◼ "Willfulness, in the sense of a conscious intent to impede discovery, and not mere delay, inability or good faith resistance, must be demonstrated before sanctions may be imposed." *Hawes Firearms Co.*, 634 P.2d at 378. *See also Oaks v. Rojcewicz*, 409 P.2d 839, 840 (Alaska 1966) ("record must establish a willful refusal on the part of a party ordered to make discovery" before court may impose sanctions). Despite Honda's contrary contentions we believe the record in this case supports a finding of willful noncompliance.

6. She added that under 28 U.S.C. § 1450 (1973), Honda's position was probably incorrect as a matter of law. Nonetheless, she gave Honda the benefit of the doubt.

7. This court has consistently followed the standard of review set out in *Bachner v. Pearson*, 432 P.2d 525, 528 (Alaska 1967):
   In determining whether a party's actions constitute a refusal to obey an order to produce and whether the sanction expressly provided by Rule 37(b)(2)(a) should be imposed, the superior court's discretionary authority is involved. We will reverse only if we are convinced that there has been an abuse of discretion.
   *Accord Hazen v. Municipality of Anchorage*, 718 P.2d 456, 460 (Alaska 1986); *Hawes Firearms Co. v. Edwards*, 634 P.2d 377, 378 (Alaska 1981); *Hart v. Wolff*, 489 P.2d 114, 118 (Alaska 1971).

The discovery history shows beyond doubt that Judge Greene gave Honda's situation very careful consideration. She had given Honda several warnings, oral and written, which Honda failed to heed. She had extended deadlines, imposed less drastic sanctions, and endured Honda's violations of court orders until it became evident that this ultimate sanction was necessary and appropriate. Honda's contention that it fully cooperated and made extraordinary efforts to comply with discovery is simply contradicted by the record. Although Honda produced some documents and provided for the depositions of two Japanese witnesses, the fact is that every single court order compelling production was violated, and the violations simply were not adequately explained by Honda. We cannot say that the trial court abused its discretion in imposing this sanction.[8] *See Hawes Firearms Co.*, 634 P.2d at 379–81 (court was justified in concluding that noncompliance was willful where record showed party had responsive documents in his control, but failed to produce them); *Hart v. Wolff*, 489 P.2d 114, 118 (Alaska 1971) (trial court properly inferred that discovery violations were willful in light of the particular circumstances in the record).

Alternatively, Honda argues that, even if it did act willfully, the sanction imposed is not "tailored closely" to its particular discovery violation, and thus it is impermissible. Specifically, it contends that the documents allegedly withheld relate only to the issue of design defect, and therefore the sanction should have been limited to an establishment of the fact that a defect existed; it should still be able to contest the causation issue.

■ A discovery sanction that orders an issue to be taken as established (*i.e.*, Honda's liability) must be sufficiently related to the discovery violation. *See Bachner v. Pearson*, 479 P.2d 319, 324 (Alaska 1970).

The test is whether the established issue is an "element[ ] of the dispute that cannot be determined on the merits without disclosure of the evidence the court has ordered the party to produce." *Hazen v. Municipality of Anchorage*, 718 P.2d 456, 460 (Alaska 1986) (quoting *Bachner*, 479 P.2d at 324). If the issues established are not sufficiently related to the withheld information, the discovery sanction is considered "mere punishment" and is impermissible. *Id.*

■ We do not believe that the sanction imposed here is impermissible "punishment." It is sufficiently tailored to Honda's discovery violation. In *Bachner*, we specifically upheld an interpretation of a sanction order which imposed liability for failure to produce certain materials. That case also involved a products liability claim, and the materials sought were primarily related to the issue of defect. We reasoned:

It can be ventured without hesitation that the plaintiffs could not have reasonably been expected to prove either the existence of the defect *or the causal link between the defect and the crash* without an opportunity to inspect the [unproduced materials].

*Bachner*, 479 P.2d at 324–25 (emphasis added). Similarly, without the design defect documents which Honda withheld, Salzman cannot be expected to prove *either* the existence of a defect *or* causation. Therefore, it cannot be said that the sanction here was not closely tailored to Honda's misconduct; the issue established was directly related to the information Honda refused to supply. Since not only the defect, but also causation, depended on the availability of the unproduced documents for their proof, it is sensible that any effective sanction establish *both* of these issues. As such, we find no abuse of discretion on this ground.

---

8. Honda's arguments that the discovery requests were intrusive or that it reasonably believed certain documents were not requested are meritless. Honda never offered a reasonable explanation for its continued violations, and they are inexcusable. Similarly, the contention that the trial court should be reversed because Honda *did* produce some of the documents is inadequate. Judge Greene listed ten unproduced items; even *if* Honda did produce the three items it claims, it offers no acceptable explanation for its failure to produce the remaining items.

We conclude that the trial court did not abuse its discretion in imposing summary liability in this case. The record indicates that Honda willfully and deliberately disregarded reasonable court orders despite continual warnings by Judge Greene. Thus, we AFFIRM.

MATTHEWS, C.J., and MOORE, J., not participating.