OTIS ELEVATOR COMPANY, INC.,
Appellant and Cross–Appellee,

v.

Marilyn R. Stulpin GARBER, and Northward Operating Co., Inc., an Alaska Corporation, a/k/a Northward Associates, Appellees and Cross–Appellants.

Nos. S–3546, S–3547 and S–3580.

Supreme Court of Alaska.

Nov. 15, 1991.

Dale W. House, Michelle Michaud, Mark Rindner, Lane, Powell & Barker, Anchorage, for Otis Elevator Co., Inc.

Gerald E. Stinson, Fairbanks, for Marilyn R. Stulpin Garber.

Robert L. Eastaugh, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for Northward Associates.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, and COMPTON, JJ. ·

## OPINION ON REHEARING

MATTHEWS, Justice.

Marilyn R. Stulpin Garber (Garber) was injured on March 27, 1986, as she attempted to get on one of the elevators located in the Northward Building in Fairbanks. She claimed she tripped because the elevator stopped somewhat above the floor. The elevator was manufactured by Otis Elevator Company and installed in 1952. At the time of the accident, Otis was under contract with Northward Associates, the building owner, to maintain and repair the elevator. Garber filed suit against Northward and Otis, claiming negligence and products liability. Northward filed a cross-claim for indemnity against Otis. After a lengthy and complex discovery process, the trial judge entered a sanctions order declaring Otis liable to both Garber and Northward for failing to properly respond to interrogatories and requests for production.

I. *Propriety of the Sanctions Order*

■ The interrogatories and requests for production at issue were served on December 21, 1987. Otis objected to the interrogatories because there were more than thirty questions.[1] Northward moved to compel. The motion was granted on February 3, 1988, but the trial court permitted Otis to make additional objections to the interrogatories and set a deadline. Otis answered one interrogatory entirely, two partially, and objected to the rest, stating they were too burdensome and overly broad. All of the requests for the production of documents were objected to on the same basis,

except one. On July 19, 1988, Northward moved for an order compelling discovery, seeking answers to all of the interrogatories and production of the requested documents. Otis opposed the motion, and a hearing was held on November 8, 1988.

The court found that one of the interrogatories was too broad and required no answer. Numerous other interrogatories, as well as several requests for production, were narrowed in scope by the court as to time and place. The court set a December 30, 1988 deadline for Otis to comply.

Otis answered the interrogatories and responded to the requests for production. Northward was not satisfied with Otis' responses and, on January 20, 1989, made a motion for an order of sanctions. Northward argued its request for production of documents for "this elevator or similar elevators" was narrowly construed by Otis.

At oral argument, the court construed "similar" to mean "an elevator that operates basically the same as this elevator." On the other hand, Otis construed "similar" to mean "electric geared elevators which, like the subject elevator, are equipped with a 10 UCL controller and with a 6850C selector." Otis produced information concerning 958 elevators located throughout the country that were known to fit this description. In opposing the motion for sanctions, Otis argued that elevators having different controllers and selectors were significantly different from the elevator under dispute.

In its motion supporting sanctions, Northward argued that Otis purposefully omitted producing information concerning similar elevators in Sacramento, where Northward's expert resided. In response to this allegation, Otis stated it compiled the information concerning the 958 elevators similar to that involved in this case from forms available at Otis' home office,

1. Alaska Civil Rule 26(a) states in relevant part, "[w]ritten interrogatories pursuant to Rule 33 of these rules are limited to thirty questions, which shall include paragraphs and subparagraphs." We interpret 26(a)'s limitation on interrogatories to mean that no more than thirty separate answers may be required without court approv-

al. Here, there were twenty-five · numbered questions; but according to Otis, if the subquestions are counted there are fifty-one questions. However in this case, the superior court granted approval for requiring additional answers.

and that some of these forms were not completely filled out. Otis noted that Northward inspected documents only in Anchorage and indicated no interest in viewing documents at any other locations where documents were available.

The trial court granted sanctions striking Otis' defenses on the issue of liability. The court found that Otis "has been willful in failing to produce discovery throughout the course of this litigation from the outset." The court also found that Otis too narrowly construed the term "similar":

> Any realistic reading of any of the requests for production, at the very least, Otis should have said something like, we don't know if this elevator in this building has a 10UCL selector, 'cause we don't keep information that way—or mechanism—but it does have a 6850 selector.

Civil Rule 37(b)(2) allows sanctions to be imposed when a party fails to comply with a court order requiring discovery:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> (A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order[.]

 An order that imposes liability on a defendant is an extreme sanction which should be used only in extreme cases. This is not such a case. It is arguable that Otis complied with the order compelling discovery of November 8, 1988. To the extent that it may have fallen short of compliance by too narrowly interpreting what was meant by a "similar" elevator, its non-compliance seems trivial. Northward did not indicate an interest in inspecting the more than 900 files outside of Anchorage pertaining to the same model elevator. It therefore seems unlikely that Northward was interested in going even further afield and inspecting the many volumes of files

concerning elevators which may broadly be similar, but have different controllers and selectors. If, however, that was Northward's goal, the court should have issued a clarifying order.

The court's statement that Otis intentionally failed to make discovery from the outset of this litigation is too general to serve as a basis for affirming the order. The subject of the motion for sanctions was whether Otis had failed to comply with the order of November 8, 1988, not Otis' attitude in the abstract.

In summary, there has been no demonstration in this case of willful non-compliance with a discovery order, which, as distinct from delay, inability, or good faith resistance, is necessary to justify litigation-ending sanctions. For these reasons, the order imposing sanctions against Otis is vacated.

## II. *Independent Finding of Negligence*

Following the entry of the sanctions order, a trial was scheduled on Garber's negligence claims against Northward, on her punitive damages claim against Otis, and to determine compensatory damages. Otis' counsel sought permission to present evidence of Northward's negligence as a defense to Northward's indemnity claim, but the court ruled that Otis could only put on testimony that Northward's conduct was so outrageous that the court should relieve Otis of the preclusion order. Otis then assumed the defense of Northward. At trial, Garber sought to prove her claims against Northward and her punitive damages claim against Otis. Northward, defended now by Otis' counsel, argued that Garber was comparatively negligent.

Judge Hodges made the following factual findings at the end of trial:

> [T]he court specifically finds that the Northward Operating Company has a non-delegable duty to see that the elevator service in the building operated correctly....
>
> The court specifically finds that the judgment which will be awarded in favor of plaintiff is as to both Northward and

Otis because of the non-delegable duty. The court does not find any independent negligence on the part of the Northward Operating Company.

. . . .

The court does not find that there is a product defect with respect to the elevator. The court, however, does find that Otis was negligent, even though the court granted plaintiff motion for liability based on the discovery violation.

The court finds that it was negligence on the part of Otis not to better maintain the elevator and that negligence was the legal cause of the elevator misleveling, and the legal cause of the injuries sustained by plaintiff.

The court specifically finds that plaintiff was not negligent.

■ We find that Otis is bound by Judge Hodges' conclusion that it was negligent. One of plaintiff's theories of liability against Northward is that Northward had a non-delegable duty and is therefore vicariously liable to Garber because of the negligence of Otis. Judge Hodges accepted this theory. Otis, which assumed the defense of Northward, had an opportunity to defend against this theory on the grounds that Otis was not negligent. Having failed in this effort, Otis is bound by the result. *See* RESTATEMENT (SECOND) JUDGMENTS § 57 (1982).

■ Otis also claims that Judge Hodges' order limiting the testimony of its expert, Red Matthews, to his deposition, was erroneous. This order was imposed as a sanction against Otis because when Otis presented Matthews for his deposition, Matthews had not yet inspected the elevator. When Otis assumed Northward's defense, it had the opportunity, on behalf of Northward, to elicit Matthews' observations of the elevator based on an inspection, since Northward was not bound by the sanction limiting Matthews' testimony.

Thus Otis' claim of error on this point is moot.

■ We cannot conclude, however, that the proceedings allowed a determination of Otis' defense that Northward was independently negligent. Judge Hodges specifically restricted Otis to the presentation of evidence that Northward's conduct was so outrageous that the court should lift the sanction requiring Otis to indemnify Northward. Therefore, Otis was denied the opportunity to present evidence that may have shown that Northward's independent negligence contributed to Garber's injuries. Negligence on the part of a tortfeasor indemnitee bars its claim to indemnity. *See, e.g., Koehring Mfg. Co. v. Earthmovers of Fairbanks, Inc.,* 763 P.2d 499, 503 (Alaska 1988); *Vertecs Corp. v. Reichhold Chemicals, Inc.,* 661 P.2d 619 (Alaska 1983). On remand, there must be a trial on the issue of Northward's independent negligence.

### III. *Damages*

The superior court awarded Garber compensatory damages totalling $104,200 [2] plus interest, costs and attorney's fees. In addition, the court found that the injury was not the legal cause of the non-vesting of Garber's pension and declined to award punitive damages.

Both Garber and Otis challenge the superior court's decision regarding damages. Such an award is reviewed using a clearly erroneous standard. Civil Rule 52(a). "A finding is clearly erroneous when, although there may be evidence to support it, we are left with the definite and firm conviction on the entire record that a mistake has been committed." *Alaska Foods, Inc. v. American Manufacturer's Mutual Insurance Co.,* 482 P.2d 842, 848 (Alaska 1971).

■ The testimony as to damages included a report submitted by Garber's economist, who also testified at trial. Additional evidence included testimony from Garber's

---

**2.** Specifically the court's award breaks down as follows: $5,000 past medical expenses; $5,000 future medical expenses; $3,500 employment retraining; $2,700 1986 lost income; $7,000 1987 lost income; $3,500 1988 lost income; $1,000 pre-trial 1989 lost income; $2,500 post-trial 1989 lost income; $3,000 1990 lost income; $3,000 1991 lost income; $15,000 lost pension benefits; $5,000 pre-trial loss of enjoyment of life; $20,000 post-trial loss of enjoyment of life; $7,500 pre-trial pain and suffering; and, $20,000 post-trial pain and suffering.

doctor, an employment therapist, and Garber herself. With one exception, Judge Hodges' award was not clearly erroneous.[3] The exception is the award of only $5,000 for Garber's future medical expenses.

Economist Chris Fawson obtained information from Garber's physician, Dr. Lindig, regarding her medical and pharmacy expenses from the accident to the date of the trial. Fawson testified that Lindig believed that Garber's average medical costs will remain approximately the same throughout her life, and calculated the cost of physician services for the remainder of her life to be $42,241. Relying on one month's pharmaceutical bill, Fawson calculated future pharmaceutical expenses to be $42,108, for a total future medical cost of $84,349. The court awarded $5,000.

While it is not clear that an award of the full $84,000 would be required, no basis is apparent from the evidence or from the trial court's findings which justifies a finding of only $5,000 for Garber's future medical expenses. This award should be re-evaluated on remand.

The superior court's order entering sanctions against Otis is REVERSED. The judgment in favor of Garber against Northward and Otis is AFFIRMED as to liability and as to damages except as noted hereafter. The award for future medical expenses is VACATED. On remand, the court should re-evaluate such damages and may, in its discretion, take additional evidence concerning them. Further, the court should make findings concerning Garber's claim for loss of medical insurance coverage. The judgment in favor of Northward against Otis on Northward's cross-claim for indemnity is REVERSED.[4] On remand, Otis' defense of independent negligence on the part of Northward shall be tried.

MOORE, J., not participating.

K.L.F., Petitioner,

v.

---

**3.** Garber contends that Civil Rule 52(a), as interpreted in our decision in *Merrill v. Merrill,* 368 P.2d 546 (Alaska 1962), requires this case to be remanded for more extensive findings of fact supporting the judgment. This argument lacks merit. Although Judge Hodges' findings were not extensive, they provided a sufficient basis for our review. We, however, agree with Garber that additional findings are necessary concerning her claim for damages for loss of medical insurance coverage since Judge Hodges did not make any findings regarding this claim. This should be remedied on remand.

**4.** In light of this decision, the order requiring Otis to pay Northward's attorney's fees and costs must be vacated.