Alvie HUGHES, Wanda
Hughes, Appellants,

v.

Matthew BOBICH, Grace Black, Diane
Black–Smith, David Richards, and Craig
Smith, individually and as partners in
ABC Partnership d/b/a Publix Storage,
and Matthew Bobich and David Rich-
ards individually and as partners in Di-
mond Self–Storage, aka Dimond Mini–
Storage, and Matthew Bobich, Diane
Black–Smith, David Richards, and Craig
Smith, individually and as partners in
ABC Investment Group aka Dimond
Mini–Storage, Appellees.

No. S–5432.

Supreme Court of Alaska.

June 10, 1994.

Kenneth W. Legacki, Anchorage, for appellants.

C.R. Kennelly, Stepovich, Kennelly & Stepovich, P.C., Anchorage, for appellees.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and BRYNER, J. Pro Tem.*

## OPINION

BRYNER, Justice Pro Tem.

Alvie and Wanda Hughes sued Matthew Bobich for back wages and damages resulting from Bobich's alleged failure to provide medical insurance. The superior court dismissed the Hughes' suit due to a discovery violation; alternatively, the court granted Bobich's summary judgment on the Hughes' claim for back wages. The Hughes appeal, challenging the superior court's use of litigation ending sanctions. We reverse.

## I. BACKGROUND

The Hughes were employed by Matthew Bobich and his business partners at the partnership's storage facility, Publix Storage (hereinafter collectively Bobich).[1] In 1991, the Hughes filed a complaint alleging that Bobich had failed to pay them overtime wages and had breached a promise to provide medical insurance during their employment.

On August 6, 1991, Bobich served interrogatories, requests for production of documents, and requests for admissions upon the Hughes. Included in the discovery documents was a request for the Hughes to admit that they had in fact been paid all of their overtime wages. The Hughes did not respond. Instead, their attorney, Kenneth Legacki, verbally agreed with Bobich's attorneys, Donald McClintock and James McCollum, to "hold off discovery" while they attempted to settle the case. By a letter dated August 15, Legacki provided McClintock with an itemized account of all overtime for which the Hughes claimed they had received no compensation.

By fall of 1991, efforts toward an informal resolution of the case had failed. Legacki notified Bobich's counsel that "settlement discussions were over and [Legacki] was about to file discovery and set [the case] for trial." Some time thereafter, McClintock and McCollum withdrew from the case, and attorney C.R. Kennelly entered an appearance on behalf of Bobich. On February 5, 1992, Bobich, through Kennelly, served new interrogatories, requests for production of documents, and requests for releases of information on the Hughes. The Hughes submitted vague and incomplete answers to the interrogatories; they did not respond to the requests for production or to the requests for release of information.

---

* Sitting by assignment made under article IV, section 16 of the Alaska Constitution.

1. The partnership dissolved during the course of this litigation, and Bobich agreed to indemnify the other defendants for all liabilities arising out of the operation of Publix Storage.

As a result, on April 21, 1992, Bobich filed a motion to compel discovery. On June 1, 1992, the superior court granted the motion and issued an order compelling the Hughes to answer the February 1992 interrogatories fully, to respond to the requests for production of documents, and to provide the requested releases of information within fifteen days. The Hughes failed to comply with the court's order.

Based on the Hughes' failure to comply with the June 1 order, Bobich filed a motion for sanctions pursuant to Alaska Civil Rule 37. A short time later, Bobich also filed a motion for summary judgment on the Hughes' claim for overtime wages. The summary judgment motion was based on the Hughes' failure to respond to Bobich's August 6, 1991 request for admission, which called on the Hughes to admit that they had been paid all of their overtime wages. In his summary judgment motion, Bobich argued that, under Alaska Civil Rule 36(a), the Hughes' failure to file a timely response to his request should be construed as an admission that they had already been paid. Relying on this admission, Bobich maintained that he was entitled to judgment as a matter of law.

The Hughes opposed Bobich's motion for Civil Rule 37(b) discovery sanctions, asserting that Bobich had filed the motion to harass them and claiming that they had already conveyed all requested discovery documents to Bobich's former counsel. The Hughes also opposed Bobich's motion for summary judgment, arguing that Legacki's August 15, 1991 letter to McClintock and McCollulm amounted to an answer to the August 6 request for admissions, because the letter itemized overtime work for which the Hughes claimed Bobich still owed them $108,008.92.

Superior Court Judge Karl M. Johnstone heard Bobich's motions for discovery sanctions and summary judgment on August 17, 1992. With respect to the motion for Civil Rule 37 discovery sanctions, Bobich acknowledged that the parties had initially agreed to defer discovery pending settlement negotiations, but pointed out that settlement efforts had clearly ended by the time of Legacki's November 1991 letter to McClintock and McCollum, which stated that the Hughes were about to file discovery and set the case for trial. Bobich argued that even if the Hughes were excused from engaging in discovery prior to November of 1991, they had no excuse for violating the court's June 1, 1992 order, which compelled their compliance with the discovery requests propounded on February 5, 1992.

With respect to the Hughes' failure to answer his August 6, 1991 request for admissions, the basis for the summary judgment motion, Bobich asserted that Legacki had never been told that his August 15, 1991 letter to McClintock and McCollum concerning the Hughes' claim for overtime compensation would be treated as a "substitute for formal discovery responses." This assertion was supported by deposition testimony McClintock had recently provided.

When the court questioned Legacki concerning the Hughes' failure to comply with the June 1 discovery order, Legacki advanced a variety of partially conflicting claims, including that (1) he was the victim of a "paper war" initiated by Bobich's counsel; (2) Bobich's counsel had refused to meet with him to exchange discovery documents; (3) he was prepared to give the releases of information to Bobich's counsel the next day; and (4) he had already given all the documents to Bobich's counsel.

The court rejected these explanations, concluding that Legacki had failed to comply with its June 1 discovery order. The court noted that Legacki's abuse of the discovery process went beyond his failure to comply with the June 1 order. Other violations mentioned by the court included Legacki's failure to answer Bobich's August 6, 1991 request for admissions, his failure to appear for a scheduled deposition of Wanda Hughes, his scheduling of depositions of Bobich's former attorneys on unduly short notice, and his failure to cure the Hughes' noncompliance with the June 1 discovery order during the interim between the filing of Bobich's motion for sanctions and the sanction hearing itself. In addition, the court took judicial notice that Legacki had recently been reprimanded in an

unrelated case for conduct the court deemed abusive.[2]

In the superior court's view, all of these occurrences were indicative of Legacki's ongoing abuse of the discovery process. Based on this pattern of conduct, the court found that Legacki's failure to comply with its June 1 discovery order was willful and that litigation ending sanctions were justified.

In addition, the court decided that Legacki's failure to answer Bobich's August 6, 1991 request for admissions justified granting Bobich's motion for summary judgment on the Hughes' claim for overtime wages. The court found that Legacki's August 15, 1991 letter to McClintock and McCollum concerning the Hughes' claim for overtime wages did not comply with the formal requirements for a response to a request for admission, as set out in Civil Rule 36. The court also found that Legacki's explanations for failing to respond formally were insufficient. Consequently, the court deemed the subject matter of the request admitted and granted Bobich summary judgment on the Hughes' claim for overtime wages.

The Hughes appeal these rulings.

## II. DISCUSSION

### A. Discovery Sanctions Under Civil Rule 37

#### 1. Standard of Review and Controlling Law

Civil Rule 37 affords trial courts broad power to enforce discovery orders by the use of sanctions. In relevant part, Alaska Civil Rule 37(b)(2) provides:

> If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> ....
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part

thereof, or rendering a judgment by default against the disobedient party[.]

■ A trial court's decision to impose discovery sanctions is generally subject to review only for abuse of discretion. *Underwriters at Lloyd's, London v. The Narrows*, 846 P.2d 118, 119 (Alaska 1993). We have nonetheless recognized that litigation ending sanctions are disfavored and that the trial court's discretion to impose such sanctions is narrowly limited to extreme situations:

> [S]ince the law disfavors litigation ending sanctions, the superior court has the discretion to impose such sanctions only in "extreme circumstances." *Otis Elevator Co. v. Garber*, 820 P.2d 1072, 1074 (Alaska 1991). We have held that "a party should not be barred from his or her day in court where an alternative remedy would suffice to make the adverse party whole." *Power Constructors v. Acres American*, 811 P.2d 1052, 1055 (Alaska 1991).

*Sandstrom & Sons, Inc. v. State*, 843 P.2d 645, 647 (Alaska 1992).

Our cases clearly and narrowly define the permissible range within which a trial court may impose litigation ending sanctions:

> The law on Rule 37 sanctions in Alaska is well settled. Issue establishment under Rule 37(b), that is, conclusively resolving an issue against a party who does not comply with discovery orders, is an "extreme sanction which should be used only in extreme cases." *Otis Elevator Co. v. Garber*, 820 P.2d 1072, 1074 (Alaska 1991). For this reason, the trial court must find that the non-complying party "willfully" violated the discovery order in question. *Alaska Trams Corp. v. Alaska Elec. Light & Power*, 743 P.2d 350, 354 (Alaska 1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988). "Willfulness" is defined as the "conscious intent to impede discovery, and not mere delay, inability or good faith resistance." *Hawes Firearms Co. v. Edwards*, 634 P.2d 377, 378 (Alaska 1981). We have held that before a court

2. Judge Johnstone took judicial notice of Legacki's conduct in *LeDoux v. Unisea*, No. 91–3354 Ci. (Alaska Super., 3d Dist., Anchorage) (still pending), where Legacki evidently filed

"four or five motions to amend the pleadings," prompting the court to warn Legacki that he had been abusing the process.

may impose litigation ending sanctions for discovery violations the record must clearly indicate a reasonable exploration of possible and meaningful alternatives to dismissal. *Sandstrom & Sons, Inc. v. State,* 843 P.2d 645 (Alaska 1992). Finally, the sanction must be "sufficiently related" to the discovery violation. *Honda Motor Co. v. Salzman,* 751 P.2d 489, 493 (Alaska 1988). We must determine "if the established issue is an 'element of the dispute that cannot be determined on the merits without disclosure of the evidence the court has ordered the party to produce.'" *Id.* (quoting *Hazen v. Municipality of Anchorage,* 718 P.2d 456, 460 (Alaska 1986)).

*Underwriters,* 846 P.2d at 119–20.

### 2. Analysis

We apply these principles to the present case. The Hughes first contend that the trial court erred in finding that they willfully violated its June 1, 1992 discovery order. The Hughes do not seriously dispute that they failed to comply with the discovery order; instead, they argue that Bobich failed to establish that their noncompliance was willful in the sense required for litigation ending sanctions, that is, that the Hughes engaged in a "conscious intent to impede discovery." *Alaska Trams Corp. v. Alaska Elec. Light and Power,* 743 P.2d 350, 354 (Alaska 1987); *Hawes Firearms Co. v. Edwards,* 634 P.2d 377, 378 (Alaska 1981).

■ This argument, however, misallocates the applicable burden of proof on the issue of willfulness. Once noncompliance has been demonstrated, the noncomplying party bears the burden of proving that the failure to comply was not willful. *Alaska Trams,* 743 P.2d at 354; *Dade v. State, Child Support Enforcement Div.,* 725 P.2d 706, 708 (Alaska 1986). At the sanctions hearing, Legacki conceded that the Hughes had failed to

execute the releases of information Bobich had requested or to provide complete answers to all of the February 1992 interrogatories. These concessions established noncompliance with the court's June 1 discovery order and imposed on the Hughes the burden of proving the absence of willfulness.

■ When the court questioned Legacki regarding the Hughes' noncompliance, Legacki offered a number of unsatisfactory excuses, which were properly rejected. Because the evidence established a substantial and continuing violation of the June 1 discovery order, and because the Hughes failed to meet their burden of disproving willfulness, the court could properly find that the Hughes' noncompliance was willful.

■ The Hughes next contend that the trial court failed to engage in a reasonable exploration of alternatives to dismissal. While we have recognized that the trial court need not make detailed findings or examine every alternative remedy, we have held that litigation ending sanctions will not be upheld unless "the record clearly indicate[s] a reasonable exploration of possible and meaningful alternatives to dismissal." *Power Constructors v. Acres Am.,* 811 P.2d 1052, 1055 (Alaska 1991); *see also Sandstrom,* 843 P.2d at 648. Exploration of alternative sanctions will not be assumed on a silent record. *See, e.g., Sandstrom,* 843 P.2d at 648. Nor will a conclusory rejection of all sanctions short of dismissal suffice as a reasonable exploration of meaningful alternatives. *See Underwriters,* 846 P.2d at 121.

Here, apart from the trial court's conclusory statement that no sanction other than dismissal would remedy the Hughes' failure to comply with its June 1 discovery order, the record discloses no exploration of meaningful alternatives and provides no insight into the reasons that impelled the court to reject alternative sanctions.[3] Nor does the

---

**3.** At the conclusion of the August 17 sanctions hearing, Judge Johnstone stated, in relevant part:

I'm forced to conclude that this cannot be remedied with anything short of dismissal. I'm aware that the impact of this is to your clients and not to you personally, and I regret that, but I see no other alternative to this after your answers to the court's questions.... So,

it's my regrettable duty to dismiss your case with prejudice on behalf of the Hughes on the grounds that it's the only remedy I think that will protect against further abuse.

Judge Johnstone's written findings of fact and conclusions of law are equally conclusory in rejecting alternative sanctions:

record support the conclusion that dismissal was actually necessary to remedy the Hughes' disobedience of the court's order.

We have previously approved litigation ending sanctions in cases involving repeated violations of discovery orders relating to crucial information or issues.[4] In contrast, in the present case, although the record clearly establishes the Hughes' willful and obstinate noncompliance with the June 1 discovery order and a more generalized pattern of disregard for discovery rules as a whole,[5] the Hughes had violated no prior discovery orders, and no previous sanctions had been imposed against them during the course of this case.

Moreover, it appears that the Hughes' noncompliance resulted in relatively little actual prejudice to Bobich. By the time of the sanctions hearing, Bobich had taken depositions of Alvie and Wanda Hughes. Through their testimony, he had evidently obtained much of the information that the Hughes had failed to provide in their incomplete responses to Bobich's February 1992 interrogatories. Additionally, by the time of the sanctions hearing, the Hughes had seemingly already produced requested documents and were prepared to execute all requested releases for information.

Our decisions have insisted that a litigation ending discovery sanction be "sufficiently related" to the underlying discovery violation. *Honda Motor Co. v. Salzman,* 751 P.2d at 493. We have held that a sufficient relationship can be found only when "the established issue is an 'element of the dispute that cannot be determined on the merits without disclosure of the evidence the court has ordered the party to produce.'" *Id.* (quoting *Hazen v. Municipality of Anchorage,* 718 P.2d 456, 460 (Alaska 1986) and *Bachner v. Pearson,* 479 P.2d 319, 324 (Alaska 1970)). When a discovery violation does not threaten prejudice of this magnitude, the extreme sanction of dismissal is inappropriate.

While the issue of prejudice was not squarely addressed by the trial court, the Hughes' noncompliance with the June 1 discovery order does not appear to have actually deprived Bobich of his ability to defend his case on its merits. Under these circumstances, the sanction of dismissal was disproportionately severe.

Given the trial court's failure to engage in a "reasonable exploration of possible and meaningful alternatives to dismissal," *Power Constructors,* 811 P.2d at 1055, the absence of substantial evidence to support the trial court's rejection of lesser sanctions, and the limited extent of prejudice resulting from the

Sanctions short of dismissal of Alvie and Wanda Hughes['] complaint will not cure the abuses of the discovery rules and violations of this court's orders.

4. *See, e.g., Honda Motor Co. v. Salzman,* 751 P.2d 489 (Alaska 1988) (upholding litigation ending sanction for repeated disregard of orders compelling disclosure of crucial design documents in a products liability case); *Alaska Trams Corp. v. Alaska Elec. Light and Power,* 743 P.2d 350 (Alaska 1987) (approving the use of litigation ending sanction after plaintiff had disregarded four discovery orders relating to the same materials over a 14–month period, and after an express warning that litigation ending sanctions would be imposed for a further violation).

5. The broader pattern of discovery abuse noted by the trial court could be construed as indicative of willfulness and, to that extent, could properly be relied on by the trial court. The precise issue before the court at the sanctions hearing, however, was Legacki's failure to comply with the June 1 discovery order. Legacki's general abuse of the discovery process was not in itself

an appropriate subject for sanctions by the trial court, because Legacki's "attitude in the abstract" was not at issue. *See Otis Elevator Co. v. Garber,* 820 P.2d 1072, 1074 (Alaska 1991). Nevertheless, the trial court's findings suggest that the sanctions it imposed were indeed meant to remedy Legacki's more general pattern of abuse. To the extent the court sought to sanction Legacki for his more general pattern of discovery abuse, its order of dismissal amounted to "mere punishment," and, as such, was impermissible. *Hazen v. Municipality of Anchorage,* 718 P.2d 456, 460 (Alaska 1986) (quoting *Bachner v. Pearson,* 479 P.2d 319, 324 (Alaska 1970)). Particularly troublesome in this regard is the trial court's judicial notice of conduct for which Legacki had evidently been reprimanded in a separate case. The court's reliance on Legacki's conduct in another case raises serious issues of fairness, since the court gave Legacki no notice that his prior conduct would be at issue and no opportunity to refute the court's characterization of that conduct.

Hughes' noncompliance with the June 1 discovery order, we conclude that the trial court abused its discretion in ordering the Hughes' claims dismissed.

### B. Failure to Respond to Request for Admissions

#### 1. Standard of Review and Controlling Law

We must separately consider the trial court's order of summary judgment in favor of Bobich on the Hughes' claim for overtime wages. The order was entered as a result of the Hughes' failure to answer Bobich's August 6, 1991 request for admission.

Under Civil Rule 36(a), the subject matter of a request for admission is automatically deemed admitted when the party to whom the request is addressed fails to file a timely response or objection.[6] *See* 4A *Moore's Federal Practice,* ¶ 36.05[4], at 36–58 n. 6. The potential harshness of this automatic provision is mitigated by Rule 36(b), which provides that the trial court "may permit withdrawal or amendment [of the admission] when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."[7] *See United States v. Kasuboski,* 834 F.2d 1345, 1350 n. 6 (7th Cir.1987).

 The trial court's decision to allow or disallow the withdrawal of an admission is subject to reversal for abuse of discretion. *City of Kenai v. Ferguson,* 732 P.2d 184, 190 (Alaska 1987). We will find an abuse of discretion if our review of the record leaves us with "a definite and firm conviction that the judge made a mistake[.]" *Id.* (citing *Channel Flying, Inc. v. Bernhardt,* 451 P.2d 570, 572 (Alaska 1969)).

#### 2. Analysis

 In the present case, Bobich requested the Hughes to "[a]dmit that on or about the time you quit employment with Publix Storage you were paid for all past due overtime compensation." Almost immediately after the request for admission was filed, the parties agreed to refrain from formal discovery pending settlement discussions. The Hughes promptly furnished Bobich detailed information pertaining to their claim for overtime wages.

Settlement discussions eventually broke down and formal discovery resumed. The Hughes did not formally respond to Bobich's earlier request for admission, evidently believing that the information they had informally supplied amounted to a sufficient answer to Bobich's request for admission. This belief was not patently unreasonable, since the information the Hughes had already disclosed unquestionably answered Bobich's request for admission in substance, if not in form. Notably, although the trial court ultimately concluded that the Hughes' informal response did not technically satisfy the requirements Civil Rule 36(a), the court did not find that the Hughes had acted willfully or in bad faith. Moreover, the information that the Hughes had informally disclosed unquestionably placed Bobich on notice that the issue of overtime wages was actually disputed and had not been admitted. In moving for summary judgment based on the Hughes' failure to deny his request for admission, Bobich candidly acknowledged that he had suffered no actual prejudice.

Civil Rule 36(b) expressly authorizes withdrawal of an admission when "the merits of the action will be subserved thereby" and when no prejudice will result therefrom. *City of Kenai,* 732 P.2d at 190. This court

---

6. In this regard, Civil Rule 36(a) provides that a "matter of which an admission is requested ... is admitted unless ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter[.]"

7. Similarly, when an answer is filed but fails to provide an adequate response to a request for admission or otherwise fails to comply with the

requirements of Rule 36(a), the rule grants the trial court broad discretion to deem a matter admitted or to allow the filing of an amended answer:

> If the court determines that an answer does not comply with the requirements of [Rule 36], it may order either that the matter is admitted or that an amended answer be served.

Alaska R.Civ.P. 36(a).

has held that "[a] party can demonstrate that withdrawal of admissions subserves the merit by showing that the admission concerns a key factual issue." *Id.* Here, the disputed admission plainly concerned a key factual issue.[8] Furthermore, as we have already observed, withdrawal of the admission would have resulted in no actual prejudice to Bobich. Under the circumstances, we conclude that the trial court abused its discretion in granting Bobich's motion for summary judgment without first allowing the Hughes the opportunity to withdraw the admission that resulted from their failure to formally respond to Bobich's earlier request.[9]

## III. CONCLUSION

The trial court's finding that the Hughes violated its June 1, 1992 discovery order is amply supported by the evidence. While the serious and willful nature of · the violation certainly justifies the imposition of substantial sanctions,[10] we conclude that the trial court abused its discretion in ordering the Hughes' complaint dismissed. We further conclude that the court abused its discretion in alternatively granting Bobich's motion for summary judgment on the Hughes' overtime wage claim.

Accordingly, we REVERSE the judgment entered by the superior court.[11]

8. Bobich's request for admission effectively called upon the Hughes to admit that their claim for overtime wages was meritless. The trial court's decision to deem the matter admitted necessarily precluded the Hughes from litigating their overtime wage claim on its merits and entitled Bobich to summary judgment on the issue.

9. Bobich argues that the trial court did not abuse its discretion in granting the summary judgment motion without first allowing the Hughes an opportunity to withdraw their admission, since the Hughes did not move for withdrawal until after summary judgment had already been granted. This argument is unpersuasive under the circumstances of this case. In opposing Bobich's motion for summary judgment, the Hughes claimed

that their previous informal response substantially complied with the requirements of Civil Rule 36(a). Given this claim, the Hughes had no occasion to move for withdrawal until the trial court ruled that the information they had informally disclosed did not qualify as a formal response to Bobich's request for admission; yet the trial court made this ruling at the same time as it granted Bobich's motion for summary judgment.

10. We leave the issue of appropriate sanctions to the discretion of the trial court on remand.

11. Our reversal of the trial court's decision on these grounds makes it unnecessary for us to decide the various alternative grounds advanced by the Hughes in challenging the trial court's orders of dismissal and summary judgment.