Philip J. HOWARTH, Appellant,

v.

FIRST NATIONAL BANK OF ANCHORAGE, Appellee.

No. 2203.

Supreme Court of Alaska.

Sept. 24, 1975.

Stephen S. DeLisio of Merdes, Schaible, Staley & DeLisio, Anchorage, for appellant.

Roger Cremo and John R. Beard, Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, ERWIN, and BOOCHEVER, JJ.

CONNOR, Justice.

This is an appeal from the superior court's granting of appellee First National Bank of Anchorage's motion for summary judgment.

### I

In August of 1961, Philip J. Howarth, appellant,[1] was the owner of an improved piece of real property located in Spenard, Alaska.[2] At that time the First National Bank of Anchorage, appellee, was the beneficiary of a first deed of trust security interest in the property and prior to September 6 or 7, 1961, retained in its possession certain policies of insurance written by Fireman's Fund Insurance Company and Reliance Insurance Company protecting the real property against fire loss.

On August 22, 1961, appellant and Progressive Enterprises, Inc., entered into a real estate contract with Howarth as seller and Progressive as buyer. Pursuant to the terms of that contract, Progressive was required to maintain fire insurance on the premises until the purchase price was paid.

Upon consummation of his agreement with Progressive, appellant wished to cancel the insurance he had obtained and receive a premium refund. Progressive told him that it was buying insurance from the Pfeifer agency. Pfeifer informed appellant that the necessary insurance had been bound but not written.

Upon receiving that information, appellant went to appellee bank to obtain his policies. He told the bank's officer, Jack Linton, what Pfeifer had said and instructed Linton to give him the policies held by the bank if he, Linton, could verify that Progressive had obtained substitute insurance.

Linton assured appellant that there was presently adequate insurance and gave appellant the Reliance policy to have it cancelled. For reasons unknown to Howarth the Fireman's Fund policy was not also given to him to be cancelled at that time. However, that policy was somehow delivered to an insurance agent on or about September 7, 1961, and it too was cancelled.

At the same time, appellant executed, on the bank's form, an assignment of all his right, title and interest in all monies due or to become due to him under the real estate contract with Progressive. In return for that assignment the bank released its security interest in the property.

According to appellant, the bank, as consideration for the assignment, agreed to undertake the duty of protecting and preserving his security interest in the property.

On September 10, 1961, the real property in question sustained severe fire damage. Several days after the fire Howarth learned that Progressive had not, in fact, obtained insurance on the premises. How-

---

1. See *Howarth v. Pfeifer*, 443 P.2d 39 (Alaska 1968), and *Howarth v. Pfeifer*, 423 P.2d 680 (Alaska 1967), two previous decisions of this court which are related to the factual situation in this case.

2. Since this is an appeal from a summary judgment, we are accepting as true all of the allegations of the party against whom the motion was made—the appellant. *See Nizinski v. Golden Valley Elec. Ass'n, Inc.*, 509 P. 2d 280, 283–84 (Alaska 1973) ; *Braund, Inc. v. White*, 486 P.2d 50, 53–54 (Alaska 1971).

arth then made claim upon the Fireman's Fund and Reliance policies, but both of those companies denied coverage on the ground that the policies had been cancelled prior to the fire.

Howarth filed this suit for breach of contract on September 11, 1967.

The bank moved for summary judgment on three theories:

1. That, as a matter of law, there existed no contract for the bank to breach;

2. That even if there was a contract, any action upon it was barred by the statute of limitations;[3]

3. That even if there was a contract, any action upon it was barred by the statute of frauds, AS 09.25.010(a)(1).[4]

In support of its motion, the bank presented to the court a memorandum of points and authorities; an affidavit from Jack Linton; a copy of the deed of trust; a copy of the contract of sale executed by appellant and Progress Enterprises, Inc.; a copy of the escrow agreement signed by appellant and Progressive Enterprises, Inc.; a copy of the assignment executed by appellant in favor of appellee; and a copy of the 1973 deposition of appellant.

Howarth, in opposition to the motion for summary judgment, submitted to the court a statement of genuine issues of fact in which he alleged, inter alia, that there was a genuine issue of fact with respect to whether a contract existed between the parties. In support of his contention that a contract existed, he referred to portions of his 1973 deposition.

The superior court based its granting of a summary judgment in favor of appellee on two grounds; first, that the statute of limitations had run on a contract cause of action; second, that the contract did not comply with the statute of frauds. The court refused to decide the issue of whether a contract existed between the parties.

Appellant seeks reversal of the court's granting of the summary judgment in order that he may have a trial on the merits of his case.

In order to decide whether the trial court erred in granting the motion for summary judgment, we must resolve the following issues:

1. Did a contract exist between the parties?

2. Does the statute of limitations preclude relief?

3. Does the statute of frauds bar relief?

We will consider these issues in turn.

## II

■ Since the bank moved for summary judgment, it had the initial burden of establishing the absence of a genuine issue as to any material fact and that, based on such undisputed fact, it was entitled to a judgment as a matter of law.[5] Once the bank made out a prima facie case, Howarth was required, in order to prevent entry of summary judgment, to set forth specific facts showing that he could produce admissible evidence reasonably tending to dispute or contradict the bank's evidence, and thus demonstrate that a material issue

3. AS 09.10.050 provides, in part:
   "No person may bring an action (1) upon a contract or liability, express or implied, . . . ; unless commenced within six years."

4. AS 09.25.010(a)(1) provides:
   "In the following cases and under the following conditions an agreement, promise, or undertaking is unenforceable unless it or some note or memorandum of it is in writing and subscribed by the party charged or by his agent:

   (1) an agreement that by its terms is not to be performed within a year from the making of it;"

5. Civil Rule 56(c) provides, in part:
   "There must also be served and filed with each motion a memorandum showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
   See *Braund, Inc. v. White*, 486 P.2d 50, 54 (Alaska 1971).

of fact existed.[6] All reasonable inferences of fact from the proffered materials had to be drawn against the bank and in favor of Howarth.[7]

■ Oral contracts are often, by their very nature, dependent upon an understanding of the surrounding circumstances, the intent of the parties, and the credibility of witnesses. If a dispute exists with respect to the terms of the oral contract, then summary judgment is not appropriate. Instead, the trier of fact in a trial setting should make the final determination with respect to the existence of the contractual agreement. However, if there is no factual dispute, then an oral contract is as much capable of being resolved by means of summary judgment as is a written contract.

■ Howarth contends that the bank, in exchange for his giving the assignment to the bank, agreed to undertake the duty of protecting and preserving his security interest in the property. According to Howarth, although this oral contract was formed at the same time as the assignment was executed, the assignment does not embody the contract. The bank denies that it entered into an oral agreement with Howarth. Since this case clearly involves a factual dispute, we hold that Howarth is entitled to a full trial on his claim that an oral contract existed between the parties and that summary judgment is not an appropriate means of disposing of this claim.

### III

The superior court found that the contract, which obligated the bank to compensate Howarth for losses caused by fires, was breached when the bank agreed to purchase insurance but failed to do so, *i. e.*

on September 6, and that, therefore, the six-year statute of limitations applicable to contract actions had run at the time appellant filed suit.[8]

In his brief, Howarth argues that no breach occurred prior to September 10, 1961, the date of the fire, because the contract could not be breached prior to the time of loss. According to appellant, breach required two elements; first, the property had to be damaged; and second, he had to sustain a loss as a result of that damage. Moreover, even if a breach occurred prior to September 10, 1961, the fiduciary nature of the relationship between appellant and appellee precluded the statute of limitations from running prior to the time when appellant either had actual knowledge of the breach or should, in the exercise of ordinary care, have had such knowledge.

The bank, in its brief, did not respond to appellant's argument with respect to the statute of limitations. However, in its memorandum in support of its motion for summary judgment, the bank argued that

"[i]f the bank's promise was to refrain from delivering the old policy in the absence of new insurance, the bank breached that promise . . . when it delivered the old policy on September 6, 1961. Plaintiff did not commence this action against the bank until September 11, 1967, at which time his cause of action was barred by AS 09.10.050."

■■ The statute of limitations begins to run in contract causes of action from the time the right of action accrues. *Warren v. U. S.,* 199 F. 753, 757 (5th Cir. 1912). This is usually the time of the breach of the agreement, rather than the

---

6. Civil Rule 56(c) provides, in part:
   "The adverse party not later than two days prior to the hearing may serve opposing affidavits, a concise 'statement of genuine issues' setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, and any other memorandum in opposition to the motion."

*See Braund, Inc. v. White,* 486 P.2d 50, 54 n. 5 (Alaska 1971).

7. *Wilson v. Pollet,* 416 P.2d 381, 383–84 (Alaska 1966); 6 Moore, Federal Practice § 56.15[3] at 2337.

8. For the language of the relevant statute, AS 09.10.050, see note 2, *supra.*

time that actual damages are sustained as a consequence of the breach. A contract action actually accrues or arises when there is an existing right to sue for breach of the contract. *Thorpe v. Schoenbrun*, 202 Pa.Super. 375, 195 A.2d 870, 872 (Pa. Super.Ct.1963).

■ Ordinarily, a cause of action for breach of contract accrues as soon as the promisor fails to do the thing contracted for, and the statute of limitations begins to run at such time. *Waxman v. Citizens Nat. Trust & Savings Bank,* 123 Cal.App. 2d 145, 266 P.2d 48 (Cal.1954). It is not material that the injury from the breach is not suffered until afterward, the commencement of the limitation being contemporaneous with the origin of the cause of action. *Roberts v. Richard & Sons, Inc.,* 113 N.H. 154, 304 A.2d 364 (N.H.1973).

■ However, if Howarth can prove that the bank had a contractual duty "to preserve and protect" his property, including a duty to maintain fire insurance, then the statute of limitations will not bar recovery. The bank could have fulfilled its duty either by acting as the insurer of the property or by contracting with an insurance company. In either case, appellant's property would have been protected. Thus, breach would not occur until Howarth's property suffered fire damage and additionally the bank refused to compensate appellant.

Since the fire occurred on September 10, 1961, Howarth would not have sought compensation from the insurance companies or the bank until some time shortly after that date. Howarth commenced the present action on September 11, 1967. Thus, the six-year statute of limitations applicable to contract actions does not bar relief.

## IV

Appellant argues that the statute of frauds [9] should not bar relief because the contract is not within the scope of the statute, since it can be performed within one year; because the contract is excluded from the operation of the statute by the exception for contracts fully performed on one side; [10] because the bank created a memorandum of a contractual relationship between the parties in the form of Mr. Linton's affidavit; and because the bank is estopped to plead the statute because of appellant's reliance on the representations of the bank.

The superior court ruled that the statute of frauds barred relief because the contract consisted of an oral promise which was not performed within one year.

■ A contract is not governed by the requirements of the statute of frauds unless it contains a negation of the right or capability of performance within the year. *Renault v. L. N. Renault & Sons, Inc.,* 188 F.2d 317, 321–22 (3d Cir. 1951); *Lloyd v. Kleefisch,* 48 Cal.App.2d 408, 120 P.2d 97, 101 (Cal.1941). In order for the statute of frauds to apply, it must appear that the parties intended, when they made the contract, that it should not be performed within the year. *Hopper v. Lennen & Mitchell, Inc.,* 146 F.2d 364, 366–67 (9th Cir. 1944); *Tostevin v. Douglas,* 160 Cal.App.2d 321, 325 P.2d 130, 134 (Cal. 1958). If the contract, according to the intentions of the parties as shown by the terms of the contract, may be fully performed within a year from the time it is made, it is not within the statute, even though the time of its performance is uncertain, and may probably extend, be expected by the parties to extend, and in fact does extend, beyond the year. *Warner v.*

9. For the language of the relevant statute, AS 09.25.010(a)(1), see note 3, *supra.*

10. AS 09.25.020(1) provides:
"A contract, promise, or agreement which is subject to § 10 of this chapter, which does not satisfy the requirements of that section, but which is otherwise valid is enforceable if
(1) there has been full performance on one side accepted by the other in accordance with the contract;"

*Texas & Pacific Ry.*, 164 U.S. 418, 422, 17 S.Ct. 147, 41 L.Ed. 495 (1896) ; *Cascaden v. Bell*, 257 F. 926, 929 (9th Cir. 1919) ; *Connelly v. Venus Foods, Inc.*, 345 P.2d 117, 120 (Cal.1959) ; *Beckett v. Cosby*, 73 Wash.2d 825, 440 P.2d 831, 832 (Wash. 1968).

Howarth and the bank did not expressly agree that the bank's promise to preserve and protect Howarth's interest would not be fulfilled within one year. And it was possible, if the purchaser of the property paid off its mortgage within one year, that appellee's duties under the contract would be discharged within one year. Since full performance was possible within one year, the statute of frauds does not bar relief.

Reversed.