Daniel DeNARDO, Appellant,

v.

ABC INC. RVS MOTORHOMES,
and Harvey Yates, Appellees.

No. S–9980.

Supreme Court of Alaska.

July 26, 2002.

Daniel DeNardo, pro se, Anchorage.

Cheryl L. Graves and Laura L. Farley, Le Gros Buchanan & Paul, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

· "It is precisely because outright failures to respond to discovery halt the case development process dead in its tracks, and threaten the underpinnings of the discovery system, that [Rule 37] authorizes ... courts, in responding to this kind of misconduct, ... to impose in the first instance any of a wide range of sanctions."[1] Such power, however, does not go unchecked and is the subject of this appeal. Daniel DeNardo claims the superior court abused its discretion in dismissing his complaint for failure to comply with a court order compelling discovery. DeNardo also makes constitutional as well as other claims in regards to the superior court's order. However, because DeNardo was given multiple chances to comply with discovery but each time refused, we affirm the decision of the superior court.

## II. FACTS AND PROCEEDINGS

Daniel DeNardo was an employee of ABC, Inc. RVs Motorhomes (ABC). DeNardo applied for a position as a recreational vehicle (RV) salesperson advertised in a newspaper by submitting his resume. On March 8, 1999, ABC alleges that John and Jay Marquardt interviewed DeNardo and offered him the position. DeNardo, however, argues only John Marquardt was present during the interview. The employment agreement was oral; no written document verified the terms of DeNardo's employment. On March 12, 1999, while DeNardo was filling out an employment form designed to verify his identity and work eligibility, ABC alleges that DeNardo displayed his passport, but did not show his driver's license. ABC claims DeNardo was informed a valid driver's license was necessary for the position because he was occasionally required to drive the RVs. DeNardo claims his driver's license was never requested and that he was told he would not have to drive the RVs as a part of his employment.

DeNardo was terminated on March 25, 1999 for his failure to provide a driver's license and his hostile behavior.

DeNardo filed a complaint in superior court in May 1999 alleging breach of an oral employment contract, interference with contractual relations, and emotional distress. In response to the complaint, ABC contended that, although DeNardo was employed by the company, there was no employment contract because he was an at-will employee. ABC argues that DeNardo's dismissal was justified.

In October 1999 DeNardo filed a motion to compel production of documents, generally seeking employment information about other salespeople employed by ABC. This motion was denied by Superior Court Judge Brian Shortell. DeNardo moved for reconsideration of the issue. This motion was denied in November 1999.

Also in November 1999 ABC filed a motion to compel. The motion claimed DeNardo had failed to provide requested information regarding his prior residences and employers, his criminal and litigation history, and his subsequent employment. The motion also requested pertinent background information such as a copy of his driver's license, social security card, tax records, and signed release authorizations. Judge Shortell granted the motion and awarded $100 to ABC as attorney's fees for having to bring the motion to compel. Judge Shortell also ordered DeNardo to respond to the order compelling discovery by December 27. DeNardo moved for reconsideration, but reconsideration was denied.

DeNardo failed to comply with Judge Shortell's order compelling discovery. ABC then filed a second motion to compel requesting dismissal of DeNardo's complaint or, in the alternative, additional sanctions. The alternative ABC proposed was that "the presumption should be drawn in favor of the Defendants." ABC asked that DeNardo be prohibited from offering any of the information requested into evidence and that a presumption be established that DeNardo was an at-will employee hired on a commission

---

1. *Hikita v. Nichiro Gyogyo Kaisha, Ltd.,* 12 P.3d 1169, 1175 (Alaska 2000) (quoting 7 James Wm. Moore et al., Moore's Federal Practice § 37.90, at 37–141 (3d ed.1997)) (alteration in original).

basis, "thereby presuming no contract existed." DeNardo opposed ABC's motion and filed a second motion to compel on February 14, 2000. On February 15 Judge Shortell issued a second order against DeNardo compelling discovery, but he declined to dismiss DeNardo's lawsuit. Instead, Judge Shortell stayed any action in the lawsuit for sixty days, waiting for DeNardo to comply with the order and warning that failure to comply now might result in dismissal.

On April 7 ABC wrote to DeNardo advising him of the imminent deadline and its intent to renew the motion to dismiss if he did indeed fail to comply. No response was received. Sixty days passed and DeNardo again failed to comply. ABC again moved to dismiss. On May 9 DeNardo filed a motion for discovery, alleging he needed information from ABC in order to respond to ABC's motion to dismiss. By this time, because of Judge Shortell's retirement, Superior Court Judge Stephanie E. Joannides had been assigned the case. Upon review of the pleadings, Judge Joannides dismissed the lawsuit under Alaska Rule of Civil Procedure 37(b)(2)(C) for DeNardo's failure to comply with the court's previous discovery orders. DeNardo subsequently moved for reconsideration and renewal of his previous discovery motions. ABC opposed reconsideration and reconsideration was denied.

DeNardo now appeals the superior court's order of dismissal.

## III. STANDARD OF REVIEW

We review a trial court's imposition of sanctions under Alaska Rule of Civil Procedure 37(b) for a party's failure to comply with a discovery order for an abuse of discretion.[2] However, a "trial court's discretion is limited when the effect of the sanction it selects is to impose liability on the offending

party, establish the outcome of or preclude evidence on a central issue, or end the litigation entirely."[3]

Whether a trial court weighed the appropriate factors in issuing a discovery order is reviewed *de novo*.[4] Factual findings by the trial court are reviewed under the clearly erroneous standard.[5]

"When interpreting the Civil Rules we exercise our independent judgment, adopting the rule of law that is most persuasive in light of reason, precedent, and policy."[6] Constitutional questions are reviewed *de novo*.[7]

## IV. DISCUSSION

### A. The Superior Court Was Within Its Discretion in Dismissing DeNardo's Complaint.

DeNardo argues that Judge Joannides was not within her discretion in dismissing his complaint for violation of a discovery order. We disagree.

Alaska Rule of Civil Procedure 37 "affords trial courts broad power to enforce discovery orders by the use of sanctions."[8] Rule 37(b)(2)(C) provides in relevant part that when a party fails to obey an order to provide discovery, the court may enter an order dismissing the action. However, the sanction of dismissal is only allowed in extreme cases because " 'a party should not be barred from his or her day in court where an alternative remedy would suffice to make the adverse party whole.' "[9]

Because of the extreme nature of dismissal, the Rules of Civil Procedure require that before a case is dismissed the trial court must first find (1) that the non-complying party acted willfully to violate the order in

2. *Coffland v. Coffland,* 4 P.3d 317, 320 (Alaska 2000).

3. *Sykes v. Melba Creek Mining, Inc.,* 952 P.2d 1164, 1169 (Alaska 1998).

4. *Peter v. Progressive Corp.,* 986 P.2d 865, 867 (Alaska 1999).

5. *Coffland,* 4 P.3d at 320.

6. *Peter,* 986 P.2d at 867 (internal citations omitted).

7. *Id.*

8. *Hughes v. Bobich,* 875 P.2d 749, 752 (Alaska 1994).

9. *Id.* (quoting *Sandstrom & Sons, Inc. v. State,* 843 P.2d 645, 647 (Alaska 1992)).

question, (2) that there is resulting prejudice to the opposing party, and (3) that the imposed dismissal is sufficiently related to the violation at issue. In addition, the court must consider a reasonable exploration of alternatives to dismissal and whether those alternatives would adequately protect the opposing party as well as deter other discovery violations.[10]

### 1. DeNardo's failure to comply with Judge Shortell's discovery order was willful.

■ DeNardo claims that the superior court's order deleting six categories of discovery from ABC's original motion to compel shows that his failure to comply with the court's order was not willful. Moreover, he argues that, if he had been allowed to answer ABC's motion to dismiss with the discovery material he sought from ABC, it would show that ABC had committed many misrepresentations. ABC responds that DeNardo willfully disobeyed the court's order. Willfulness in this context is defined as a "conscious intent to impede discovery, and not mere delay, inability or good faith resistance."[11]

Although the court did limit the amount of discovery that ABC had originally requested, this order in itself does nothing to show that the remaining discovery requests that were allowed were unwarranted, or that DeNardo's actions in failing to comply with the court's order were in good faith. If anything, the limiting order shows the superior court's effort to ensure that DeNardo was not being harassed through the discovery process, not that the remaining discovery was irrelevant.

DeNardo also argues that if the court had granted his motion to compel he could have obeyed the court's order. However, we rejected this argument in *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*[12] In *Hikita* we held that a discovery request cannot be satisfied by a party claiming "it is 'attempting to ascertain the answers,' and putting off its obligation to a later date."[13] And, as in *Hughes v. Bobich,*[14] DeNardo's argument here "misallocates the applicable burden of proof on the issue of willfulness. Once noncompliance has been demonstrated, the noncomplying party bears the burden of proving that the failure to comply was not willful."[15] DeNardo fails to meet this burden. Rather than showing that his failure to comply was not willful—for example, by showing that the requested material was lost—DeNardo repeatedly claimed that ABC had no right to the answers or documents. But the superior court had previously decided that ABC had precisely that right (and DeNardo has not appealed that finding).[16]

DeNardo also claims that his actions were not willful because the information could be found in the public record or because ABC was already in possession of the relevant information. However, "we do not require a complying party to devise creative ways to obtain information that the noncomplying party controls and refuses to produce."[17] In *Hughes,* we found that "[b]ecause the evidence established a substantial and continuing violation ... and because the Hughes failed to meet their burden of disproving willfulness, the court could properly find that the Hughes' noncompliance was willful."[18] Similarly here, the evidence establishes a continuing violation of the court's order. While the violation may not be as egregious as violations in other cases,[19] DeNardo distin-

---

**10.** Alaska R. Civ. P. 37(b)(3); *Hughes,* 875 P.2d at 753.

**11.** *Hawes Firearms Co. v. Edwards,* 634 P.2d 377, 378 (Alaska 1981).

**12.** 12 P.3d 1169, 1175 (Alaska 2001).

**13.** *Id.*

**14.** 875 P.2d 749 (Alaska 1994).

**15.** *Id.* at 753.

**16.** In granting the motion to compel, the superior court implicitly affirmed the likelihood that the answers or documents will lead to the discovery of admissible evidence. Alaska R. Civ. P. 26(b).

**17.** *Coffland v. Coffland,* 4 P.3d 317, 321 (Alaska 2000).

**18.** *Hughes,* 875 P.2d at 753.

**19.** *See, e.g., Coffland,* 4 P.3d at 320–21 (Alaska 2000) (holding that sanctions were proper after husband failed to answer any interrogatories,

guishes himself by showing no intention of ever complying with the court's orders.

In addition, ABC is correct that it is illogical for DeNardo to argue that he needs discovery from ABC in order to complete a discovery order compelling information from him. Additional discovery from ABC would, in no way, make DeNardo's driver's license or his prior work history easier for him to produce and DeNardo does not explain in his briefing why such discovery would help.

Although he does not argue it, we also note that DeNardo's *pro se* status does not provide an excuse for his noncompliance with the court's order.[20] In her order, Judge Joannides specifically found DeNardo to be familiar with the litigation process based on other previous and pending actions with which he was involved. And, as we found in *Coffland v. Coffland*,[21] *pro se* litigants "must make some attempt to comply with the court's procedure before receiving the benefit of the court's leniency." [22] DeNardo has made no effort to comply and therefore is not entitled to any special allowances based on his *pro se* status.

The burden was on DeNardo to show his conduct in not answering ABC's discovery was not willful, but instead was good faith resistance. Because DeNardo did not meet this burden, we find his conduct to evidence a willful intent to impede discovery.

### 2. ABC suffered prejudice as a result of DeNardo's failure to comply.

ABC argues it suffered prejudice as a result of DeNardo's failure to produce the requested information. Analysis of each category of requested information supports ABC's position.

#### a. Prior residences and employers

ABC argues that it was prejudiced by DeNardo's failure to provide information regarding his prior residences and employers, information that might go towards DeNardo's credibility. A listing of DeNardo's prior residences, ABC claims, might have aided in determining jurisdictions to search for his criminal and litigation history.

ABC is correct that information regarding DeNardo's prior residences and employers might have been helpful in determining which jurisdictions to search for his criminal and litigation history. In addition, it may have been helpful in determining DeNardo's credibility; credibility would likely be particularly important in resolving the underlying dispute here, which concerns an oral contract.[23] Knowledge of prior residences would allow ABC to contact past neighbors of DeNardo's who might give further information regarding credibility. Speaking to past employers would allow ABC to determine if DeNardo had had previous work-related problems and might also go towards determining his credibility in work-related situations.

Because DeNardo's prior residences and employment history would have been helpful in determining how to uncover other relevant evidence as well as issues involving DeNardo's credibility, Judge Joannides did not err in finding ABC was prejudiced by DeNardo's failure to provide the information.

#### b. Criminal and litigation history

ABC claims that information regarding DeNardo's criminal and litigation history was necessary because it could have affected DeNardo's credibility, a necessary factor in resolving a disputed oral contract. DeNardo claims that such information is generally ir-

failed to timely file witness list, and failed to timely provide information for valuation of family business); *Honda Motor Co., Ltd. v. Salzman*, 751 P.2d 489, 492–93 (Alaska 1988) (affirming declaration of liability for various discovery violations against party after oral and written warnings, extended deadlines, and less drastic sanctions were imposed).

**20.** ABC, however, does argue against the application of a more lenient standard to DeNardo as a result of his *pro se* status.

**21.** 4 P.3d 317 (Alaska 2000).

**22.** *Id.* at 321.

**23.** *See Howarth v. First Nat'l Bank of Anchorage*, 540 P.2d 486, 490 (Alaska 1975) (holding that oral contacts are, "by their very nature, dependent upon an understanding of the surrounding circumstances, the intent of the parties, and the credibility of witnesses.").

relevant, that character evidence is not admissible in a civil trial, and that, in any event, such information is available in the public record.

As noted above, credibility is a necessary factor in resolving a dispute over an oral contract.[24] DeNardo's criminal history is thus possibly relevant as it might affect the fact-finder's view of DeNardo's credibility. DeNardo's previous litigation history is potentially relevant as well, and it might lead to the discovery of admissible evidence.

### c. Subsequent employment and tax records

ABC argues that in order to properly determine damages, information regarding De-Nardo's subsequent employment is required. DeNardo responds that ABC already possesses information regarding his subsequent employment and that his tax records are "protected."

We have held that "[w]ithholding materials relating to a party's damages may seriously prejudice the adverse party by making it difficult or impossible to adequately assess the strength of the opponent's case, thereby leaving the opponent in a weakened position for settlement negotiations or other purposes."[25] That appears to have been the case here.

▬▬▬ In his complaint, DeNardo requested compensatory damages. However, as DeNardo knows from his own previous litigation, " 'a plaintiff alleging breach of contract must present evidence sufficient to calculate the amount of the loss caused by the breach.' "[26] DeNardo argues that ABC has all of the information it needs because it knows he was subsequently hired by Alaska Economy RVs. However, "[t]he purpose of awarding damages for a breach of contract is to put the injured party in as good a position as that party would have been had the con-

tract been fully performed."[27] Therefore, by analogy to wrongful discharge cases, an employee is generally entitled to the amount of the agreed-upon salary for the unexpired term of his employment minus what he could earn by making diligent efforts to obtain similar work.[28] ABC has no way of knowing, absent DeNardo providing it, the salary information necessary to litigate or settle the issue of damages. Therefore, despite ABC possibly having some knowledge regarding where DeNardo was working shortly after he left ABC, DeNardo was required to provide the information ABC requested.

Because whether DeNardo obtained subsequent employment and because information involving that employment was relevant to any damages regarding his claim for breach of contract, ABC was prejudiced by his failure to provide the requested information.

### d. DeNardo's driver's license

One of the alleged reasons for DeNardo's termination was his failure to provide a copy of his driver's license upon being hired by ABC, which claimed that driving RVs was a requirement of DeNardo's employment. ABC thus argues that whether DeNardo had a valid driver's license is at the very heart of this dispute. DeNardo claims this information is irrelevant because driving was not a requirement.

This factual dispute was not susceptible to resolution during the pretrial period when discovery occurs. But ABC was entitled to discovery of information pertinent to the claim so that it could prepare for the litigation. Had the case proceeded to trial, and had the fact-finder concluded that a driver's license was a requirement of the job, it would clearly have been important to know if De-Nardo possessed a license.

24. *Id.*

25. *Alaska Trams Corp. v. Alaska Elec. Light & Power,* 743 P.2d 350, 354 (Alaska 1987).

26. *DeNardo v. GCI Communication Corp.,* 983 P.2d 1288, 1290 (Alaska 1999) (quoting *Ben Lomond, Inc. v. Schwartz,* 915 P.2d 632, 636 (Alaska 1996)).

27. *Guard v. P & R Enterprises, Inc.,* 631 P.2d 1068, 1071 (Alaska 1981).

28. *City of Fairbanks v. Rice,* 20 P.3d 1097, 1111 (Alaska 2000).

### 3. The sanction chosen was sufficiently related to DeNardo's violation of the order.

"The trial court must be allowed to enforce its discovery orders with sanctions tailored to fit the circumstances."[29] "The test for the validity of a discovery sanction that dismisses claims or orders facts or issues to be taken as established under [Rule 37(b)(2) ] is whether these claims or issues are 'elements of the dispute that cannot be determined on the merits without disclosure of the evidence the Court has ordered the party to produce.' "[30] If the dismissed claims are unrelated to the information the party refuses to supply, the discovery sanction constitutes punishment and is impermissible.[31]

The credibility of a party is relevant to the issue of how to interpret an oral contract.[32] Evidence of DeNardo's credibility, which could be influenced by information gained from prior residences, and prior employment, was highly relevant to the dismissed claims. And subsequent employment, as well as tax information, are relevant to the issue of damages. Because the information requested was directly relevant to the claims at issue, the dismissal sanction was sufficiently related to the violation.

### 4. A lesser sanction would not adequately protect the opposing party while deterring other discovery violations.

DeNardo claims Judge Joannides did not consider meaningful alternatives to the sanction of dismissal in her order as required by law. ABC contends that a lesser sanction in this instance would not have sufficed.

"While we have recognized that the trial court need not make detailed findings or examine every alternative remedy, we have held that litigation ending sanctions will not be upheld unless 'the record clearly indicate[s] a reasonable exploration of possible and meaningful alternatives to dismissal.' "[33] A conclusory rejection of all sanctions short of dismissing an action does not suffice as a reasonable exploration of meaningful alternatives.[34] " '[A] party should not be barred from his or her day in court where an alternative remedy would suffice to make the adverse party whole.' "[35] "[B]efore a court may impose litigation ending sanctions for discovery violations the record must clearly indicate a reasonable exploration of possible and meaningful alternatives to dismissal."[36]

In her order, Judge Joannides stated, "Lesser sanctions than dismissal have been attempted and have been unsuccessful. Plaintiff's violations are so numerous [that] sanctions other than dismissal will not adequately protect defendants." We agree. No alternate remedy would serve to make ABC whole.

Prior to Judge Joannides taking over the case, Judge Shortell gave DeNardo ample chances to comply. First, he imposed a monetary sanction. Second, he issued a stay on proceedings. Each time, DeNardo responded with the same outright refusal. And finally, after DeNardo did not act within the sixty-day period allowed by the court, Judge Joannides granted ABC's motion to dismiss.

---

**29.** *Rohweder v. Fleetwood Homes of Oregon, Inc.,* 767 P.2d 187, 191 (Alaska 1989).

**30.** *Hazen v. Municipality of Anchorage,* 718 P.2d 456, 460 (Alaska 1986) (quoting *Bachner v. Pearson,* 479 P.2d 319, 324 (Alaska 1970)).

**31.** *Id.*

**32.** *Howarth v. First Nat'l Bank of Anchorage,* 540 P.2d 486, 490 (Alaska 1975).

**33.** *Hughes v. Bobich,* 875 P.2d 749, 753 (Alaska 1994) (alteration in original) (quoting *Power Constructors, Inc. v. Acres Am.,* 811 P.2d 1052, 1055 (Alaska 1991)).

**34.** *Id.*

**35.** *Sandstrom & Sons, Inc. v. State,* 843 P.2d 645, 647 (Alaska 1992) (quoting *Power Constructors, Inc.,* 811 P.2d at 1055 (remanding dismissal of lawsuit for reasonable exploration of alternate sanction to dismissal where no evidence existed on record of such exploration prior to dismissal)).

**36.** *Underwriters at Lloyd's London v. The Narrows,* 846 P.2d 118, 119 (Alaska 1993).

DeNardo claims Judge Joannides did not consider lesser sanctions. At this point, though, she was not required to consider lesser sanctions. The record already indicated that lesser sanctions had been attempted unsuccessfully. DeNardo's violations had become so egregious, Judge Joannides acted well within her discretion in determining that no lesser sanction would deter DeNardo from future violations.

**B. The Imposition of Sanctions Did Not Deny DeNardo Any Constitutional Rights.**

**1. DeNardo's due process rights were not violated by the dismissal of his complaint.**

■ DeNardo claims that, because he was not afforded an opportunity to respond to the motion to dismiss, his due process rights were violated. ABC argues that DeNardo was afforded full due process before his complaint was dismissed.

In *Sandstrom & Sons, Inc. v. State*,[37] Sandstrom argued that the superior court's dismissal of his complaint denied him due process because the superior court did not hold a dismissal hearing.[38] We held that due process was properly afforded by the superior court's warning to Sandstrom in advance that dismissal with prejudice would occur if Sandstrom did not comply with the discovery order. "This order afforded Sandstrom notice and an adequate opportunity to be heard on the dismissal issue."[39] In *Sandstrom*, the time between the court's warning and the actual dismissal was almost two months.[40] Similarly, DeNardo was given sixty days to comply with the court's order, an order which also warned dismissal would be a consequence of noncompliance. Although DeNardo requested an extension of time to respond on May 9, 2000, the superior court

was within its discretion in denying the request, as the request stated that the need for additional time was for DeNardo to complete his own discovery, not to gather materials to comply with the court's orders. DeNardo could have requested a hearing on the issue of whether dismissal was an appropriate sanction for his failure to comply. As in *Sandstrom*, however, no such hearing was requested.

Because the superior court adequately warned DeNardo dismissal would occur if the court's order was not complied with, DeNardo's right to due process was not violated by the dismissal of his complaint.

**2. DeNardo's right to a trial by jury was not violated.**

■ The Alaska Constitution guarantees the right to jury trial.[41] "The Alaska Constitution, however, preserves the right to a jury trial in civil cases only to the 'same extent it existed at common law.'"[42] In *Christensen*, Christensen argued that his right to a jury trial was violated by the court's grant of summary judgment. But we held that because a trial court had the right at common law to remove factual issues from the jury's consideration where there was insufficient evidence to raise a question of fact for the jury, a party's right to a jury trial could only be violated by a summary judgment motion when it was improperly granted.[43]

■ A party willfully refusing to comply with a discovery order risks ultimate loss of its case, whether through dismissal (if the recalcitrant party is the plaintiff)[44] or imposition of liability (if the non-complying party is the defendant).[45]

Because DeNardo was given adequate notice that he risked dismissal if he continued to violate the superior court's discovery or-

---

**37.** 843 P.2d 645 (Alaska 1992).

**38.** *Id.* at 648.

**39.** *Id.*

**40.** *Id.*

**41.** Alaska Const. art. I § 16.

**42.** *Christensen v. NCH Corp.*, 956 P.2d 468, 477 (Alaska 1998) (quoting Alaska Const. art. I, § 16).

**43.** *Id.*

**44.** *Alaska Trams Corp. v. Alaska Elec. Light & Power*, 743 P.2d 350 (Alaska 1987).

**45.** *Honda Motor Co., Ltd. v. Salzman*, 751 P.2d 489 (Alaska 1988).

der, dismissal did not violate his right to a jury trial.

### C. DeNardo Failed to Show that Alaska Rules of Civil Procedure 11, 26, 34, 37, and 56 Are Unconstitutional.

"The burden is on the party who challenges a statute or rule on constitutional grounds to demonstrate unconstitutionality, for there is a presumption of constitutionality which attaches to such enactments." [46] DeNardo claims Rules 11, 26, 34, and 37 of the Alaska Rules of Civil Procedure are unconstitutional. However, he makes no mention of these rules after his statement of issues. DeNardo therefore does not meet his burden to rebut the presumption of constitutionality that the rules enjoy.

DeNardo claims Rule 56 is unconstitutional. But his lawsuit was dismissed on a motion to dismiss, not a Rule 56 motion for summary judgment. For this reason, and because his briefing is so cursory as to constitute a waiver of the argument,[47] we reject this claim.

### D. The Information Requested by ABC Does Not Violate DeNardo's Constitutional Right to Privacy.

"The right to privacy is not absolute; it protects 'intimate' or 'sensitive personal information ... which, if disclosed even to a friend, could cause embarrassment or anxiety.' " [48] But it does not shield a party who brings a lawsuit from having to reveal information that is relevant to his or her claims, even though the information may otherwise be private.[49]

Moreover, the information at issue here is background information routinely requested in civil litigation. Although DeNardo claims his tax returns are not relevant, they provide evidence of his earning potential, information useful in any damages determination. DeNardo has no privacy defense to the discovery information relevant to the lawsuit he instituted.

## V. CONCLUSION

DeNardo willfully disobeyed court orders regarding discovery. Therefore, the superior court decision dismissing his complaint for his repeated failure to comply with those orders is AFFIRMED.[50]

---

46. *A. Fred Miller Attorneys at Law, P.C. v. Purvis,* 921 P.2d 610, 618 (Alaska 1996).

47. *A.H. v. W.P.,* 896 P.2d 240, 243 (Alaska 1995) (arguments given only cursory treatment in briefing are considered waived on appeal).

48. *Int'l Ass'n of Fire Fighters, Local 1264 v. Municipality of Anchorage,* 973 P.2d 1132, 1134 (Alaska 1999) (alterations in original) (quoting *Doe v. Alaska Superior Court, Third Judicial Dist.,* 721 P.2d 617, 629 (Alaska 1986)).

49. *See, e.g., Langdon v. Champion,* 745 P.2d 1371, 1372–73 (Alaska 1987) (restating rule that commencement of action for personal injuries constitutes plaintiff's waiver of physician-patient privilege); *Trans–World Investments v. Drobny,*

554 P.2d 1148, 1151 (Alaska 1976) (holding "that the filing of a personal injury action waives the physician-patient privilege as to all information concerning the health and medical history relevant to the matters which the plaintiff has put in issue.").

50. DeNardo's claims that the superior court erred in denying his discovery motions are moot: Because we affirm the dismissal of DeNardo's complaint, even resolving his claims in his favor would provide him no relief. "A claim is moot 'if the party bringing the action would not be entitled to any relief even if they prevail[ed].' " *Nickels v. Napolilli,* 29 P.3d 242, 254, n. 60 (Alaska 2001) (alterations in original) (quoting *Maynard v. State Farm Mut. Auto. Ins. Co.,* 902 P.2d 1328, 1329 n. 2 (Alaska 1995)).