NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LORI M. JOHNSTON, | ) | |
| | ) | Supreme Court Nos. S-14275/14306 |
| Appellant and | ) | |
| Cross-Appellee, | ) | Superior Court No. 3AN-09-05588 CI |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND JUDGMENT* |
| BENNY B. BRUMLOW, | ) | |
| | ) | No. 1430 – August 29, 2012 |
| Appellee and | ) | |
| Cross-Appellant. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances:  Lori M. Johnston, pro se, Savannah, Georgia, Appellant. Paul W. Waggoner, Law Offices of Paul Waggoner, Anchorage, for Appellee.

Before:  Fabe, Winfree, and Stowers, Justices. [Carpeneti, Chief Justice, and Christen, Justice, not participating.]

I.      INTRODUCTION

Lori Johnston and Benny Brumlow were involved in a car accident, and Johnston filed a personal injury complaint against Brumlow.  Johnston was initially represented by counsel, but her counsel withdrew and Johnston proceeded pro se.

---

\*      Entered under Appellate Rule 214.

Johnston participated in some aspects of the litigation but consistently failed to respond to discovery requests for medical records and answers to interrogatories, despite a court order. Brumlow moved to dismiss the case without prejudice and also moved for summary judgment. The superior court twice ordered Johnston to produce discovery and warned that her case would be dismissed with prejudice if she did not comply. Johnston failed to provide Brumlow with the requested discovery and the court dismissed her case with prejudice. The court never ruled on Brumlow's summary judgment motion.

Johnston appeals the dismissal of her case. Brumlow cross-appeals the court's failure to rule on his summary judgment motion and the court's allowing Johnston's counsel to withdraw. We hold that the superior court did not abuse its discretion by dismissing the case with prejudice because of Johnston's failure to produce discovery. Because we affirm the dismissal, we do not reach the merits of Brumlow's cross-appeal.

## II. FACTS AND PROCEEDINGS

On March 4, 2007, Lori Johnston and Benny Brumlow were involved in a car accident in Anchorage. According to the police report and a witness, while Johnston was in a right-turn only lane, she sped up and moved into Brumlow's lane, causing Brumlow to rear-end her.

On March 3, 2009, Johnston filed a personal injury complaint against Brumlow alleging negligence and negligence per se, which Brumlow answered. On April 22, 2009, Johnston's attorney, Sarah Tugman, sent a letter to Brumlow's attorney, Paul Waggoner. In the letter Tugman expressed Johnston's suspicion that an alleged witness to the accident, Darren Butler, did not exist because no one by that name lived at the listed address and no one answered at the listed phone number. Tugman stated:

[Johnston] will agree to dismiss her lawsuit if you will pay my present costs of $396.04 and provide us with information as to Mr. Butler's current address, driver's [license] number and phone number so that I can verify his identity, the fact that he made a report, and speak to him. If we can successfully determine that he does exist, and did in fact witness the accident, [Johnston] will dismiss the lawsuit, with prejudice, with (other than the cost payment mentioned above) each side to bear their own costs and fees.

Waggoner responded to the letter providing some information that showed Butler did exist, and stated that his client was "willing to pay the $396.04 in costs." Waggoner also stated, "I would like your answer within 10 days as to whether this case is settled. Otherwise, I want you to produce your initial disclosures." On September 8, 2009, Waggoner wrote another letter to Tugman notifying her that he had spoken to Butler and stating, "[i]f this case is not promptly resolved, I will simply take his video deposition and we will be prepared to go to trial." Waggoner and Tugman took Butler's video deposition on January 15, 2010.

In December 2009 Tugman had moved to withdraw as counsel claiming differences of opinion with Johnston and Johnston's unresponsiveness. Brumlow opposed this motion. On January 19, 2010, the superior court granted Tugman's motion to withdraw at a hearing. At the same hearing the superior court provided guidance to Johnston, who would be thereafter proceeding pro se.

Brumlow had sent a discovery request to Johnston in April 2009 when she was still represented by counsel; he re-sent it to Johnston directly two days after the January 2010 hearing. On February 11, 2010, Waggoner and Johnston conducted a telephonic deposition of Brumlow. At the time of the deposition Brumlow was living in a nursing home in Temple, Texas, and Johnston was in Charleston, South Carolina. During Johnston's questioning, Brumlow made several hostile statements towards her.

Q: All right. Were you angry at the time of the accident?

A: It's you, I could have pulled your head off just to watch your body flop.

Q: Why were you angry?

A: Because you did something that was absolutely stupid. You're continuing to do so.

Q: What is it that's so stupid?

A: Ma'am, if you'll look in the mirror you'll find it.

. . .

Q: So when did you become angry?

A: When I was talking to you and I figured out that you were simply a gold digger, out trying to get something — get some money out of.

Johnston later claimed that in light of these statements she did not respond to Brumlow's discovery request for fear of her safety. Waggoner sent Johnston a second letter on March 2, 2010, stating that her discovery responses were overdue, and later filed a motion to compel discovery. The superior court granted the motion to compel discovery on April 22, 2010, and gave Johnston 20 days to respond. Johnston did not respond.

On May 21, 2010, Brumlow moved to dismiss the case without prejudice. Johnston opposed this motion, expressing her concern that Brumlow "remains committed to hurt [her,]" and she was uncomfortable providing her medical records to Brumlow and Waggoner.

On May 28, 2010, Brumlow moved for summary judgment, arguing the case had been settled based on the conditional offer in Tugman's April 2009 letter and Waggoner's alleged acceptance. Johnston opposed the motion, stating that she did not agree to settle for $396.04 but would be willing to settle for the cost of her medical bills, physical therapy, and money she owed because of the accident, which totaled $33,383.09

plus interest. The court then issued an order in June 2010 stating, "Ms. Johnston will produce discovery requested by defendant in 10 days. Mr. Waggoner will not share these records with defendant. If Ms. Johnston does not comply or show good cause why she cannot comply, the court will dismiss her case with prejudice for wilful contemptuousness of court orders." The court did not rule on the summary judgment motion.

On July 23, 2010, Johnston filed a request for hearing because she did not "know what [was] going on with the case." On September 14, 2010, the court held a status hearing where it clearly expressed its frustration with Johnston's refusal to comply with the court's discovery orders and warned Johnston that it would dismiss her case if she did not follow the orders.

> THE COURT: All right. Ms. Johnston, I come to the tentative conclusion that by failing to answer this discovery, you are — what you're really telling me is that I should just dismiss the case. Is that your position?
>
> MS. JOHNSTON: No. That's why I wrote an opposition to the motion to dismiss and that is why I supplied the affidavits of confidentiality to protect me. That's why I went down to the courthouse carrying the medical records. The issue is not that I won't produce them, because I did take them to the courthouse. The issue is that I need to be protected. I think the deposition has made it clear that there are safety issues for me . . . . But certainly, I — I wasn't expecting it to be dismissed.[2]

The court stated it did not think Brumlow's hostile statements to Johnston "constituted a threat to the personal safety of anyone" and instead characterized Brumlow as a "crotchety old gentleman in a nursing home." Johnston demanded that Waggoner sign

---

**2** Although Johnston claimed she brought her medical records to the courthouse, she neither filed these records nor served them on Brumlow.

an "affidavit of non-association" before handing over her medical records to him because she feared he was associated with an Indian tribe she claimed was adverse to her indigenous group, the Yamasi, who, she alleged, collectively share biological make-up and medical conditions. Johnston contended that Waggoner had an obligation to sign the "affidavit of non-association" before receiving the records:

> MS. JOHNSTON: I'm just so shocked that Mr. Waggoner didn't want the medical records, because all he had to do was sign the affidavit of non-association and he would have them. So from my perspective, it really seems like he didn't want them.

> THE COURT: Okay. Well, you have your idiosyncratic — you have your own take on this, ma'am, but Mr. Waggoner is entitled to an answer to his discovery signed by you, releases signed and production of records. And he doesn't have to jump through the hoops that you make up . . . . This is a court of law, ma'am, and I set the rules and I ordered you to comply. And I now reiterate that. You've got 10 days. If you don't do it, I'm at the end of my rope. I'm going to dismiss your case.

Johnston agreed to respond to the discovery request. The court then provided more guidance to Johnston including how to procure documents from the police.

Johnston did not respond to Brumlow's discovery request within the ten-day window ordered by the court. On September 30, 2010, Brumlow filed a motion to dismiss. Johnston filed a request for written order, which expounded upon Johnston's belief that there is a systemic problem in the United States of treating Native Americans as inferior. Johnston requested that "the Judge give a written order for what the Judge wants" and that she would "appreciate any information on how to subpoena evidence" because legal aid offices were unable to help her. Johnston also filed an opposition to Brumlow's discovery requests, arguing they were "unnecessarily exhaustive" and again

stating that she would not provide the requested documents until Waggoner signed affidavits of confidentiality and non-association.

On November 9, 2010, the superior court dismissed the case with prejudice "for failure to timely respond to discovery" and issued a final judgment on the same day. Johnston appeals. Brumlow cross-appeals the court's failure to rule on his motion for summary judgment and its having permitted Tugman's withdrawal from the case.

## III. DISCUSSION

### A. Standard Of Review

Alaska Rule of Civil Procedure 37(b)(2)(C) authorizes the superior court to dismiss an action if a party fails to comply with a discovery order. It states in part:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following . . .
>
>> (C) An order . . . dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party . . . .

We review Civil Rule 37 sanctions for abuse of discretion.[1] "We will find an abuse of discretion only where the record as a whole leaves us with a definite and firm conviction that a mistake has been made."[2] "However, since the law disfavors litigation ending sanctions, the superior court has the discretion to impose such sanctions only in 'extreme

---

[1] *Alaska Trams Corp. v. Alaska Elec. Light & Power*, 743 P.2d 350, 354 (Alaska 1987).

[2] *Wooten v. Hinton*, 202 P.3d 1148, 1151 (Alaska 2009).

circumstances.' "[3]   Findings of fact are reviewed under the clearly erroneous standard.[4] "Factual findings will be reversed only if we are left with a definite and firm conviction that a mistake has been made after considering the record as a whole."[5]

B.      **The Superior Court Did Not Abuse Its Discretion By Dismissing The Case For Failure To Respond To Discovery.**

Under Civil Rule 37(b)(3), when dismissing a case for a party's failure to produce discovery, the superior court "shall consider":

> (A) the nature of the violation, including the willfulness of the conduct and the materiality of the information that the party failed to disclose;
>
> (B) the prejudice to the opposing party;
>
> (C) the relationship between the information the party failed to disclose and the proposed sanction;
>
> (D) whether a lesser sanction would adequately protect the opposing party and deter other discovery violations; and
>
> (E) other factors deemed appropriate by the court or required by law.

---

[3]      *Sandstrom & Sons, Inc. v. State*, 843 P.2d 645, 647 (Alaska 1992) (quoting *Otis Elevator Co. v. Garber*, 820 P.2d 1072, 1074 (Alaska 1991)).

[4]      *DeNardo v. ABC Inc. RVs Motorhomes*, 51 P.3d 919, 922 (Alaska 2002).

[5]      *Harris v. AHTNA, Inc.*, 193 P.3d 300, 305 (Alaska 2008).

Additionally, a party's failure to comply with a court order must be willful for Civil Rule 37(b)(3) sanctions to apply.[6] "Willfulness" is defined as "a conscious intent to impede discovery."[7]

Further, we have emphasized that "a party should not be barred from . . . her day in court where an alternative remedy would suffice to make the adverse party whole."[8] "We do not require the [superior] court to make explicit findings concerning alternative sanctions, nor do we require it to examine every single alternate remedy to dismissal," but "the record [must] clearly indicate a reasonable exploration of possible and meaningful alternatives to dismissal."[9] "A conclusory rejection of all sanctions short of dismissing an action does not suffice as a reasonable exploration of meaningful

---

[6]     Civil Rule 37(b)(3) states that the superior court "shall not make an order that has the effect of . . . dismissing a claim . . . unless the court finds that the party acted willfully." *See Sandstrom & Sons, Inc.*, 843 P.2d at 648 (citing *Rohweder v. Fleetwood Homes of Oregon*, 767 P.2d 187, 190 (Alaska 1989)).

[7]     *Hawes Firearms Co. v. Edwards*, 634 P.2d 377, 378 (Alaska 1981).

[8]     *Power Constructors, Inc. v. Acres Am.*, 811 P.2d 1052, 1055 (Alaska 1991).

[9]     *Id.*

alternatives."[10]  Alternative sanctions could include monetary sanctions, a contempt citation, or delaying trial.[11]

Because the superior court dismissed this case for "failure to timely respond to discovery," Civil Rule 37(b) applies.  The superior court's order dismissed the case with a single sentence and did not analyze the factors under Civil Rule 37(b)(3), such as the nature of the violation, the willfulness of the conduct, prejudice to the opposing party, the relationship between the information the party failed to disclose and dismissal, or whether a lesser sanction would have been appropriate.  However, even though the court did not explicitly address each of these factors, we conclude its actions substantially complied with Civil Rule 37(b).

---

[10]  *DeNardo v. ABC Inc. RVs Motorhomes*, 51 P.3d 919, 926 (Alaska 2002). We have upheld the superior court's decision to dismiss a case or impose liability-establishing discovery sanctions under Civil Rule 37(b)(2)(C) when the court has either clearly explained its reasoning in the order, including why alternative sanctions would not be appropriate, or provided lesser sanctions before taking such extreme action.  *See Khalsa v. Chose*, 261 P.3d 367, 374 (Alaska 2011) (affirming litigation-ending sanction after superior court provided successive lesser sanctions and thoroughly analyzed alternatives); *Lee v. State*, 141 P.3d 342, 351 (Alaska 2006) (concluding that the superior court properly determined there were no viable alternative sanctions to imposing liability); *DeNardo*, 51 P.3d at 926 (upholding the superior court's decision to dismiss the case after lesser sanctions of monetary sanctions and a stay on proceedings had been attempted); *Alaska Trams Corp. v. Alaska Elec. Light & Power*, 743 P.2d 350, 355-56 (Alaska 1987) (holding that the superior court did not abuse its discretion when it dismissed the case after the court issued four separate production orders over a fourteen-month period, imposed non-litigation-ending sanctions first, and warned the party that failure to produce would result in dismissal).

[11]  *See, e.g.*, *Lee*, 141 P.3d at 351; *Hikita v. Nichiro Gyogyo Kaisha, Ltd.*, 85 P.3d 458, 459 (Alaska 2004).

We are able to ascertain the superior court's implicit findings from the record and conclude these findings were not clearly erroneous.[12]  Although the court made no explicit factual findings on Johnston's willfulness, the court had previously warned that it would consider failure to respond again to the court's discovery order willful.  Therefore, when Johnston did not comply, the court implicitly found her lack of compliance willful.  This is not clear error.  The court issued three orders compelling Johnston to produce the same discovery materials.  The record shows Johnston's conduct was "a conscious intent to impede discovery."[13]  Even after the court made it clear at the September 2010 hearing that Johnston was required to respond to the discovery request, she refused, calling the discovery request "unnecessarily exhaustive" and still insisting Waggoner sign affidavits before she answer discovery and release her medical records to him.

Further, her refusal to produce discovery prejudiced Brumlow, who had first requested discovery in April 2009 and again in January 2010.  The superior court dismissed the case with prejudice in November 2010.  Johnston failed to produce routine discovery in a personal injury case during this 18-month window.  As explained below, Brumlow could not effectively evaluate Johnston's damages claims and prepare his defense without the records and information he sought.

There was a direct relationship between the information Johnston refused to produce and the discovery sanction.  The medical information Johnston failed to disclose is critical in a personal injury case.  "The test for the validity of a discovery sanction that dismisses claims . . . is whether these claims or issues are elements of the

---

[12]  *DeNardo*, 51 P.3d at 922.

[13]  *Hawes Firearms Co. v. Edwards*, 634 P.2d 377, 378 (Alaska 1981).

dispute that cannot be determined on the merits without disclosure of the evidence the court has ordered the party to produce."[14] "If the issues established are not sufficiently related to the withheld information, the discovery sanction is considered mere punishment and is impermissible."[15] Here, the discovery sanction was not "mere punishment." Brumlow was requesting medical records and answers to interrogatories on medical and damages issues which were highly relevant to the case since Johnston's complaint sought damages for her alleged injuries, and her medical records would help to prove whether the accident caused those injuries.

Finally, although the superior court did not explicitly consider alternatives to dismissal in the final judgment, the two warnings of potential dismissal in the June 2010 order and the September 2010 hearing were sufficient to satisfy the "lesser sanctions" requirement under Civil Rule 37(b)(3)(D). In *Alaska Trams Corp. v. Alaska Electric Light and Power*, we considered a superior court's warning of dismissal, similar to the warning in the court's June 2010 order in this case, to be a sufficient "limited sanction[]."[16] And in *Honda Motor Co. v. Salzman*, we affirmed a superior court's

---

[14]     *DeNardo*, 51 P.3d at 926 (quoting *Hazen v. Municipality of Anchorage*, 718 P.2d 456, 460 (Alaska 1986)) (internal quotation marks omitted).

[15]     *Honda Motor Co. v. Salzman*, 751 P.2d 489, 493 (Alaska 1988).

[16]     743 P.2d 350, 355 (Alaska 1987). The superior court's order provided:

[Alaska Trams] has until the close of business on August 27, 1985, to comply fully with this order [to produce] or to prove to this court that it does not have the ability to comply. [AELP] shall by July 28, 1985, furnish [Alaska Trams] specifics on the discovery which [Alaska Trams] has failed to make, and if [Alaska Trams] fails to make that discovery by August 27, 1985, its complaint shall be

(continued...)

imposition of liability as a discovery sanction after the court had "given Honda several warnings, oral and written, . . . extended deadlines, [and] imposed less drastic sanctions."[17]

While in recent cases we have upheld dismissal or liability-establishing discovery sanctions when there have been comprehensive findings and explanation in the courts' orders,[18] which we strongly urge trial courts to make before issuing litigation-ending or liability-establishing sanctions, the superior court's actions here were sufficient because the court warned Johnston on two separate occasions that it would dismiss her case if she did not respond to discovery requests. Thus this case is distinguishable from *Sandstrom & Sons, Inc. v. State* in which we remanded for a "reasonable exploration of alternative sanctions" after the superior court had dismissed the case with only a single warning that it would do so should the plaintiff fail to comply with its order compelling discovery responses.[19] Here the superior court issued three orders to compel discovery and warned Johnston on two separate occasions that it would dismiss her case if she failed to comply.

---

[16]    (...continued)
        dismissed with prejudice.
*Id.*

[17]    751 P.2d 489, 493-94 (Alaska 1988).

[18]    *See Khalsa v. Chose*, 261 P.3d 367, 374 (Alaska 2011) (superior court provided successive lesser sanctions and thoroughly analyzed alternatives); *Lee v. State*, 141 P.3d 342, 351 (Alaska 2006) (superior court explicitly determined that there were no viable alternative sanctions to imposing liability); *DeNardo v. ABC Inc. RVs Motorhomes*, 51 P.3d 919, 926 (Alaska 2002) (superior court had imposed lesser sanctions of monetary sanctions and a stay on proceedings).

[19]    843 P.2d 645, 645-49 (Alaska 1992) (internal quotation marks omitted).

Because Johnston is pro se, she is held to a "less stringent standard[] than [that] of lawyers."[20] We have held that the "trial judge should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish."[21] Further, "we have long held that before a litigation-ending order is entered on the basis of a pro se litigant's failure to prosecute or to abide by court rules, the court must give the litigant notice and an adequate opportunity to cure the defects in his pleadings."[22] In this case, the superior court satisfied these requirements. Again, the court gave Johnston notice that it would dismiss her case if she persisted in not producing discovery and it provided several opportunities for her to comply with her discovery responsibilities. The court also provided Johnston with guidance on the proper procedures for obtaining documents, setting up depositions, and other aspects of litigation. Thus, the superior court satisfied its responsibilities to Johnston as a pro se plaintiff.

We hold that the superior court did not abuse its discretion when it dismissed the case for Johnston's failure to respond to discovery and court orders.[23]

## IV. CONCLUSION

We AFFIRM the superior court's November 9, 2010 final judgment dismissing the case with prejudice.

---

[20] *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987).

[21] *Id.*

[22] *Azimi v. Johns*, 254 P.3d 1054, 1067 (Alaska 2011) (citation omitted).

[23] Because we hold that the superior court did not abuse its discretion in dismissing the case for failure to respond to discovery, we do not reach the issues in Brumlow's cross-appeal.